OPINION
 

 EDITH HOLLAN JONES, Circuit Judge:
 

 This appeal results from an order of the district court preliminarily enjoining state court litigation over the proceeds of a bankrupt company’s fire insurance policy. We find that (1) the district court had jurisdiction and (2) the bankruptcy automatic stay did not bar litigation in the district court, but (3) it was improper to issue an injunction, and (4) the district court should consider delegating this controversy to its adjunct bankruptcy court.
 

 I. PROCEDURAL BACKGROUND
 

 Holland America Insurance Company issued a fire insurance policy in November 1983, to Central Pecan Shelling Company, covering its Mansura, Louisiana pecan shelling and packaging facility. Central Pecan and its principal stockholders, Shepherd J. Roy and his wife, filed for Chapter 11 reorganizations on June 1, 1984. Two days later a fire consumed the facility and Mr. Roy’s body was found on the scene. Holland America alleges that Roy set the fire and that therefore claims for recovery by the Succession of Roy and by Central Pecan are barred by fraud. The property loss was $1,022,560. The policy did not name a mortgagee-loss payee.
 

 Union Bank, appellant, allegedly without knowledge of the Central Pecan bankruptcy, filed the first lawsuit on June 19 in state court, claiming that it is the loss payee. The Edgar Coco Agency, Inc., which issued the policy, had attempted post-bankruptcy to designate Union Bank as loss payee in an endorsement. However, Union Bank’s sworn proof of loss was
 
 *994
 
 rejected. Union Bank named as initial defendants Mission Insurance Company (the parent company of Holland America), Edgar Coco Agency, Inc., St. Paul Fire & Marine, and George S. Kausler, Ltd. Later, National Union Fire Insurance and Audubon Indemnity Company were joined as defendants.
 

 On July 10, 1984, the Bankruptcy Amendments and Federal Judgeship Act of 1984, Public Law 98-353, 98 Stat. 333 (hereinafter, the “Bankruptcy Amendments Act”) became effective.
 

 On July 27, Holland America filed a Federal Rule of Civil Procedure 22 interpleader action in the district court where Central Pecan’s bankruptcy is pending. Holland America denied liability on the policy and, alternatively, named all known possible claimants to its proceeds: The Succession of Roy, Central Pecan, Bunkie Bank & Trust, Cottonport Bank, Mansura State Bank, Union Bank, Douglas Guardian Warehouse, Coco, St. Paul Fire & Marine, National Union Fire and Audubon Indemnity.
 

 The district court accepted the inter-pleader action and found it had diversity jurisdiction. It held that injunctive relief was proper under 28 U.S.C. § 2361 and was necessary to effectuate its jurisdiction under 28 U.S.C. § 2283 (the Anti-Injunction Statute). The district court concluded that the interpleader would not interfere with the automatic stay in bankruptcy, citing as its authority
 
 Dakota Livestock Co. v. Keim,
 
 552 F.2d 1302 (8th Cir.1977). Consequently, the court enjoined certain of the defendants from engaging in litigation elsewhere to force payment of or collect the policy proceeds.
 

 II. JURISDICTION
 

 The district court had jurisdiction of Holland America’s action either as a proceeding “arising under or related to” Central Pecan’s bankruptcy or as a diversity case.
 

 A.
 
 Bankruptcy Jurisdiction
 

 The parties have not urged the applicability of the jurisdictional scheme created by the Bankruptcy Amendments Act, which became effective, as noted, in the course of the parties’ forum-shopping forays. Nevertheless, that statute confers on the district court “original but not exclusive jurisdiction of all civil proceedings ... arising in or related to cases under Title 11” and “exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the estate.” 28 U.S.C. §§ 1334(b) and (d). The transition provisions of the statute implemented the district court’s jurisdiction as of July 10,1984, for all bankruptcy cases and proceedings arising in or related to cases that were pending immediately before the date of enactment. Act of July 10, 1984, Pub.L. No. 98-353, § 115(a), 1984 U.S.Code Cong. & Ad.News (98 Stat.) 343. As this court found in
 
 Carlton v. BAWW, Inc.,
 
 751 F.2d 781, 788 (5th Cir. 1985). The district court now has federal bankruptcy jurisdiction, should it elect to exercise it. The scope of the bankruptcy court’s authority in this case will be discussed further below.
 

 The
 
 Carlton
 
 opinion makes clear that even though the parties to this action failed to identify this jurisdictional basis, the provisions of 28 U.S.C. § 1653
 
 [1]
 
 permit this court to allow the amendment of their pleadings de facto without a remand for that purpose. 751 F.2d at 788-89.
 

 B.
 
 Diversity Jurisdiction
 

 Central Pecan and Union Bank have disputed the district court’s jurisdiction apparently because they believe either the pending state court action or the bankruptcy court will offer more hospitable treatment of their claims. Supposing that diversity jurisdiction, pursuant to 28 U.S.C. § 1332, supplied the only basis for the district court to act, they have sought realignment of the parties to Holland America’s Rule 22 inter-pleader. Rulé 22 interpleader requires di
 
 *995
 
 versity of citizenship.
 
 State Farm Fire & Cas. Co. v. Tashire,
 
 386 U.S. 523, 528, n. 3, 87 S.Ct. 1199, 1202 n. 3, 18 L.Ed.2d 270, 274 n. 3 (1967). _
 

 Central Pecan argues that proper alignment renders Holland America a defendant and Central Pecan a plaintiff, and further,, that 28 U.S.C. § 1332(c) would deem Holland America a citizen of Louisiana, thereby destroying diversity jurisdiction. Union Bank contends that diversity jurisdiction is unavailable because Holland America’s agent, George S. Kausler, Ltd., a Louisiana corporation, is an indispensable party to the in-terpleader that must be aligned on the side of Holland America. We disagree with these jurisdictional contentions.
 

 Whether or not the parties to the interpleader should be realigned, Central Pecan’s argument fails for an erroneous construction of § 1332(c). This provision was amended in 1964 to prohibit federal diversity jurisdiction in lawsuits filed under a state direct action statute which allows a plaintiff harmed by the insured, when both are citizens of the same state, to sue a foreign insurance company for recovery of benefits under the policy without having first to secure a judgment against the insured. Section 1332(c) consigned to the state courts cases of a local nature between parties .who are citizens of the same state, regardless of the circumstance that one or more of the parties is insured by a foreign-incorporated insurance company. The Louisiana Direct Action Statute, La.Rev.Stat.Ann. 22:655, applies only to torts and not to contract disputes.
 
 Deutsche-Schiffahrtsbank, A.G. v. A. Bilbrough & Co.,
 
 563 F.Supp. 1307, 1309 (E.D.La.1983). Thus, the Louisiana Direct Action Statute does not cover actions in breach of contract to require Holland America to make payment under its casualty insurance policy, and § 1332(c) does not de-activate diversity in this case.
 

 We similarly reject Union Bank’s contention that George B. Kausler, Ltd., is an indispensable party that must be aligned with Holland America. Acting as Holland America’s agent, Kausler authorized the Edgar Coco Agency to issue the insurance policy to Central Pecan. Kausler also directed Coco not to pay the proceeds to Union Bank, following the bank’s attempt to designate itself the mortgagee-loss payee. Kausler apparently has no claim or interest in the insurance proceeds. Unlike the Coco agency, Kausler never dealt directly with the insured. Kausler is not in possession of the disputed fund, is not a claimant to the fund, and appellants have offered no legal theory under which Kaus-ler could be found liable for the proceeds. Except perhaps in unusual circumstances, the only necessary parties to this inter-pleader are the claimants to the fund and the interested stakeholder. Kausler’s position has no impact upon the district court’s jurisdiction in diversity.
 

 III. THE AUTOMATIC STAY
 

 A bankruptcy petition operates as a stay, applicable to all entities, of various types of actions to obtain affirmative relief against the debtor or his property. 11 U.S.C. § 362(a). The purpose of the automatic stay is to reinforce the jurisdiction of the bankruptcy court over the debtor’s assets and forestall the race to levy upon or make claims against the debtor’s property with possibly inconsistent results.
 
 Wedgeworth v. Fiberboard Corp.,
 
 706 F.2d 541, 544 (5th Cir.1983). Union Bank and Central Pecan urge that Holland America should have been stayed from pursuing its interpleader action in district court by virtue of either of the following subsections of the automatic stay provision, which forbids:
 
 [2]
 

 (1) The commencement or continuation, including the issuance or employment of process, of a judicial ... proceeding against the debtor that was or could have been commenced before
 
 *996
 
 the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [and]
 

 (3)Any act to obtain possession of property of the estate or of property from the estate....
 

 11 U.S.C. § 362(a)
 

 These are the only provisions of the stay arguably applicable to the case at hand. We hold that neither of these provisions applies.
 

 Subsection 1 of § 362(a) prevents the commencement or continuation of actions that were or could have been commenced against the debtor before he filed a bankruptcy petition. The fire at the Central Pecan storage facility did not occur until after the date of its Chapter 11 petition, and the debtor had no claim to recover proceeds until the fire occurred. Correspondingly, Holland America could not deny coverage prior to the occurrence of the fire. The stay simply does not apply to post-bankruptcy events. 11 U.S.C. § 362(a)(1),
 
 In re Bobroff,
 
 766 F.2d 797, 803 (3rd Cir.1985);
 
 Shell Pipe Line Corp. v. West Texas Marketing Corp.,
 
 540 F.Supp. 1155, 1161 (S.D.Tex.1982).
 

 Holland America’s interpleader action did not have the object of “obtaining possession of property of the estate” as is required by subsection 3 of § 362(a). It was filed to provide an orderly forum for resolution of conflicting claims to the proceeds and to make available the policy proceeds, subject to its defenses, to the proper parties.
 
 See Dakota Livestock Co. v. Keim,
 
 552 F.2d 1302, 1305 (8th Cir.1977);
 
 Price & Pierce Int’l Inc., v. Spicers Int’l Paper Sales, Inc.,
 
 50 B.R. 25, 26 (S.D.N.Y. 1985).
 

 While we hold that an interpleader action does not seek to “obtain” property of the estate as proscribed by § 362(a)(3), we cannot agree with Holland America’s contention that the fire insurance policy was not “property of the debtor’s estate,” but only a claim yet to be resolved.
 
 [3]
 
 The policy was owned by Central Pecan and Roy and would qualify under the Bankruptcy Code’s definition of a debtor’s estate as comprising all “legal ... interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541(a)(1).
 
 See also In re Cahokia Downs, Inc.,
 
 5 B.R. 529, 531 (Bkrtcy.S.D.Ill.1980) holding that a Holland America fire insurance policy was property of the debtor’s estate). Following the fire, any right to collect proceeds from the policy belonged initially to Central Pecan, and since liability on the policy is disputed by Holland America, Central Pecan owned a cause of action to enforce that liability. These interests fall within that part of the definition of the debtor’s estate which includes proceeds, products, rents and profits from property of the estate, as well as any interest in property acquired after the commencement of the case. 11 U.S.C. § 541(a) (6). Two types of disputes lead Holland America to the suggestion that the insurance policy might not be “property of Central Pecan’s estate”: the availability of a fraud defense to payment on the policy, and the existence of lien-based claims to the proceeds. If such disputes were held to divest the bankruptcy court of jurisdiction over a debtor’s property as defined in § 541 of the Bankruptcy Code, there would remain but a small ambit of activity for that court. Whether subject to defeasance, defenses, or liens, the fire insurance policy and any right to payment from it were property of the debtor’s bankruptcy estate.
 

 Notwithstanding that this insurance policy was the debtor’s property, the automatic stay did not prevent Holland America from pursuing this interpleader action.
 

 IV. THE INJUNCTION
 

 The district court based its award of an injunction to Holland America on 28 U.S.C.
 
 *997
 
 § 2361, which permits such relief only in connection with statutory interpleader actions grounded on 28 U.S.C. § 1335(a). Holland America failed to file its complaint under this statute, possibly because Fed.R. Civ.P. 22 interpleader, unlike statutory interpleader, does not require an actual deposit of the stakeholder’s funds in the registry of court. Bereft of support from 28 U.S.C. § 2361, the district court injunction must be tested by the standards of Fed.R. Civ.P. 65. An injunction may issue under Rule 65 if the court finds that irreparable injury would result to the movant in its absenóe, that the threatened injury to the movant outweighs the harm that the injunction may cause the nonmovant, that there is a likelihood of success on the merits, and that the public interest would not be adversely affected by the injunction.
 
 Productos Carnic, S.A. v. Central American Beef & Seafood Trading Co.,
 
 621 F.2d 683 (5th Cir.1980);
 
 Knights of the Klu Klux Klan v. East Baton Rouge Parish School Board,
 
 578 F.2d 1122, 1125 (5th Cir.1978). Injunctive relief is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion. 7 Moore’s Federal Practice ¶ 65.-04(s) (1982); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2942 at 368 (1973). The standard of review for the granting of a preliminary injunction is whether the district court abused its discretion.
 
 Meyers v. Moody,
 
 723 F.2d 388, 389 (5th Cir.1984).
 

 The record does not substantiate the granting of an injunction. Holland America has failed to make a clear showing of irreparable harm. Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.
 
 Carter v. Heard,
 
 593 F.2d 10, 12 (5th Cir.1979). The only evidence before the court on this point was contained in the affidavit of an employee for Holland America’s agent, George Kausler,
 
 [4]
 
 who speculated that multiple lawsuits could be filed and inconsistent judgments obtained by the claimants to the policy proceeds. At the date of the district court hearing, the only competing lawsuit was that filed by Union Bank in state court, which named not Holland America but its parent company as a defendant. If any other suits were actually filed against Holland America in Louisiana state court, there are adequate state procedures to effect their consolidation in the Avoyelles Parish court. 2 La.Code Civ. Proc.Ann. art. 644 (West 1985);
 
 Tropicana Pools South v. Chamberlain,
 
 324 So.2d 29, 31-32 (La.App.2d Cir.1975). No out-of-state claimant to the policy proceeds was identified in Holland America’s complaint,
 
 [5]
 
 nor has Holland America provided any reason that the matters at issue could not be adequately and fairly tried in state court. Consequently, if the actions can proceed simultaneously in federal and state court, Holland America can obtain the full and binding effect of a judgment in either forum against all claimants, and it has failed to establish irreparable injury.
 

 A further impediment to the showing of irreparable injury is that the injunction is limited to actions by the named banks and Douglas Guardian Warehouse Corporation to “recover or affect” the proceeds of Central Pecan’s insurance policy. As has been demonstrated above, that policy and its proceeds are property of Central Pecan’s bankruptcy estate. The filing of actions by alleged lien creditors seeking affirmatively “to recover or affect the proceeds” would almost surely violate the automatic stay in bankruptcy. 11 U.S.C. § 362(a)(3). In this situation, the district court’s injunction, framed in a commendably narrow manner,
 
 [6]
 
 would be superfluous.
 

 
 *998
 
 In the absence of irreparable injury to Holland America, the injunction must be overturned. Because we reverse the injunction on this ground it is unnecessary to discuss whether a valid injunction under these circumstances would run afoul of the Anti-Injunction Statute, 28 U.S.C. § 2283.
 

 V. AUTOMATIC REFERRAL IN BANKRUPTCY AND INSTRUCTIONS ON REMAND
 

 During the initial stages of this controversy, the Bankruptcy Amendments Act became effective. This statute was designed to narrow the delegation of authority to bankruptcy judges — that had resulted in invalidation of portions of the former bankruptcy regime
 
 [7]
 
 — by,
 
 inter alia,
 
 authorizing the district courts to exercise all bankruptcy jurisdiction. As a concomitant of this authority, the Bankruptcy Amendments Act provided that each district court may refer to the bankruptcy judges “any or all proceedings arising under Title 11 [the Bankruptcy Code] or arising in or related to a case under Title 11.” 28 U.S.C. § 157(a). An order of reference reflecting this delegation
 
 nunc pro tunc
 
 as of June 28, 1984, was promulgated in the Western District of Louisiana on July 25, 1984, and thus became immediately applicable to the instant interpleader action. Regardless of the blanket reference, the district court may withdraw, in whole or in part, any case or proceeding referred under § 157 to the bankruptcy court, on its own motion or on timely motion of any party, for cause shown. 28 U.S.C. § 157(d). Additionally, the district court, with the consent of all parties, may refer a proceeding “related to” a case under Title 11 to a bankruptcy judge. 28 U.S.C. § 157(c)(2). The cumula-five effect of the grant of original jurisdiction to the district court and its right to withdraw the reference in a bankruptcy case or related matter or to refer bankruptcy-related matters to the bankruptcy court leaves little doubt that the district court may exercise jurisdiction broadly, even over “core” bankruptcy matters.
 
 Carlton, v. BAWW, Inc.,
 
 751 F.2d at 781, 787-88 (5th Cir.1985).
 

 Nevertheless, the district court’s decision to hear a case like the present one, which will adjudicate the rights of the debtor and its creditors to insurance policy proceeds, must be based on a sound, articulated foundation. On remand, the district court must decide whether it is withdrawing the reference “for cause,” 28 U.S.C. § 157(d), or transferring the case to the bankruptcy court.
 

 The posture of this case does not permit us to offer more than general principles that should guide the district court in determining whether to refer or withdraw the reference. Little precedent yet exists on this subject.
 
 [8]
 
 It is apparent, however, that the district court must keep one eye cocked toward the decision of the Supreme Court in
 
 Northern Pipeline Constr. v. Marathon Oil Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which is the progenitor of the new bankruptcy court jurisdictional scheme. Whatever the pre: cise teaching of Marathon
 
 [9]
 
 it holds, at a minimum, that Article I bankruptcy courts may not have original jurisdiction over adversary proceedings that do not intimately involve the debtor-creditor relationship and rest solely in issues of state law. 458 U.S. at 84, 102 S.Ct. at 2878, 73 L.Ed.2d at 623. The plurality opinion determined that the bankruptcy court as then constituted could not hear a lawsuit instituted by the debtor
 
 *999
 
 against Marathon to recover damages for alleged breach of contract and warranty, misrepresentation, coercion and duress, all matters governed by state law. The Bankruptcy Amendments Act has attempted a flexible response to
 
 Marathon,
 
 permitting bankruptcy courts to hear “core” proceedings by blanket reference from the district courts, while authorizing them to function much like magistrates as adjuncts to the district court on matters that are merely “related to” a bankruptcy.
 
 Marathon
 
 provides the outer boundary of original referred jurisdiction of bankruptcy courts, but considerations of judicial economy also bear on the decision to withdraw the reference or refer to bankruptcy court. The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors’ and creditors’ resources, and expediting the bankruptcy process.
 

 Finally, we note that there is a jury demand in the district court file. Its continued existence may influence the district court’s decision, for while we do not reach the issue, there is some doubt whether bankruptcy courts can conduct jury trials in light of
 
 Marathon
 
 and the Bankruptcy Amendments Act.
 
 [10]
 
 The district court should apply these factors in articulating whether to withdraw the reference on this litigation.
 

 For the foregoing reasons, the temporary injunction issued by the district court is VACATED, and the cause is remanded with instructions.
 

 [1]
 

 . “Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.” 28 U.S.C. § 1653.
 

 [2]
 

 . Pursuant to Act of July 10,1984, Pub.L. No. 98-353, § 441(a)(2), 1984 Code Cong. & Ad.News (98 Stat.) 371, 11 U.S.C. § 362(a)(3) now reads as follows: "any act to obtain possession of property of the estate or property from the estate, or to exercise control over property of the estate." This additional language affects only those cases filed after October 8, 1984. Act of July 10, 1984, Pub.L. No. 98-353, § 553(a), 1984 Code Cong. & Ad.News (98 Stat.) 392.
 

 [3]
 

 . In this respect this case differs from the complex facts evident in
 
 Shell Pipe Line Corp. v. West Texas Marketing Corp.,
 
 540 F.Supp. 1155 (S.D. Tex.1982), where the debtor corporation had transferred the disputed property before the controversy arose and its claim derived from the Bankruptcy Code’s avoiding powers.
 

 [4]
 

 .Affidavit evidence may be admitted on a hearing seeking preliminary injunction. Fed.R. Civ.P. 65(b);
 
 Bracco v. Lackner,
 
 462 F.Supp. 436, 442 n. 3 (N.D.Cal.1978).
 

 [5]
 

 . The out-of-state parties defendant were liability insurers of Edgar Coco Agency and not creditors of Central Pecan.
 

 [6]
 

 .
 
 See Tashire,
 
 386 U.S. at 535, 87 S.Ct. at 1206, 18 L.Ed.2d at 278 (1967) which held that there are limits to the scope of injunctive relief available
 
 *998
 
 under statutory interpleader.
 
 Tashire
 
 is otherwise inapplicable to the present case because it construed 28 U.S.C. § 2361, permitting injunctions against pending litigation, with respect to a statutory interpleader action involving a mass tort.
 

 [7]
 

 . See remarks of Congressman Rodino and others at Cong.Rec. 130, H7489-97, June 29, 1984.
 

 [8]
 

 .
 
 See In re Lion Capital Group,
 
 48 B.R. 329, 338-39 (S.D.N.Y.1985). Compare
 
 In re American Energy, Inc.,
 
 50 B.R. 175, 178-80 (D.N.D.1985)
 
 with In re Pied Piper Casuals, Inc.,
 
 13 B.C.D. 290, 50 B.R. 549 (S.D.N.Y.1985).
 

 [9]
 

 .See concurrence of Justice O’Connor in
 
 Thomas v. Union Carbide Agric. Products Co.,
 
 — U.S. -, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) discussing this subject; 1
 
 Collier on Bankruptcy,
 
 ¶ 3.01 [2][b]£iii], 3-31, 32.
 

 [10]
 

 . Hendel and Reinhardt,
 
 Evolution of Bankruptcy Court Jurisdiction after the Bankruptcy' Amendments and Federal Judgeship Act of 1984,
 
 Com. L.j. 272, 275-76 (1985).