### LOCKHEED MARTIN CORPORATION

v.

### RAYTHEON COMPANY.

No. 4:99–CV–079–Y.

United States District Court,
N.D. Texas,
Fort Worth Division.

Feb. 19, 1999.

---

Stephen Lyle Tatum, Beal Dean, Brown Herman Dean Wiseman Liser & Hart, Fort Worth, TX, Elizabeth D. Mann, Peter M. Bransten, McDermott Will & Emery, Los Angeles, CA, for Plaintiff.

Ralph H. Duggins, Estil A. Vance, J. Frank Kinsel, Shayne D. Moses, Canty & Hanger, L.L.P., Fort Worth, TX, Jeffrey S. Davidson, Kirkland & Ellis, Los Angeles, CA, for Defendant.

## *OPINION AND ORDER DENYING APPLICATION FOR PRELIMINARY INJUNCTION*

MEANS, District Judge.

Pending before the Court is the Application for Temporary Restraining Order filed by plaintiff Lockheed Martin Corporation ("Lockheed") on January 27, 1999. In previous orders, the Court partially granted Lockheed's Application for Temporary Restraining Order and construed Lockheed's Application as also seeking a preliminary injunction. Defendant Raytheon Company ("Raytheon") filed a response in opposition to Lockheed's request for a preliminary injunction on February 8, and Lockheed filed a reply to Raytheon's response on February 10. An evidentiary hearing was held on February 12. After consideration of the evidence and argument presented at the hearing, the briefs of the parties, and the applicable law, the Court concludes that Lockheed's Application should be denied. As a result, the temporary restraining order will be vacated.

In this lawsuit, Lockheed contends that Raytheon committed itself to pursuing TOW fire-and-forget missile business exclusively through a Lockheed/Raytheon joint venture. Raytheon has informed Lockheed that it intends to respond to the government's pending request for information ("RFI") about the development or such a missile outside of the joint venture, without Lockheed's participation. As a result, Lockheed seeks a preliminary injunction to prevent Raytheon from responding to the government's RFI outside of the joint venture. Lockheed also requests that the Court prevent Raytheon's joint venture employees from collaborating with Raytheon's other employees on the TOW fire-and-forget missile. Additionally, Lockheed seeks an injunction that would prevent Raytheon from disclosing or using proprietary information obtained during the course of the joint venture to individually respond to the RFI.

In order to obtain a preliminary injunction, Lockheed has the burden of demonstrating each of the following: (1) that Lockheed has a substantial likelihood of success on the merits, (2) that there is a substantial threat Lockheed will suffer irreparable injury if an injunction is not issued, (3) that the threatened injury to Lockheed if the injunction is not issued outweighs any damage the injunction might cause Raytheon, and (4) that the injunction will not disserve the public interest. *See Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 471 (5th Cir.1985); *Canal Authority of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). A preliminary injunction is, however, "an extraordinary

and drastic remedy." *Canal,* 489 F.2d at 573. As a result, a preliminary injunction "is to be treated as the exception rather than the rule." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir.1985). Lockheed's Burden in demonstrating the elements required to obtain injunctive relief is, therefore, a heavy one. *See Hardin v. Houston Chronicle Publ'g Co.,* 572 F.2d at 1106, 1107 (5th Cir.1978). Lockheed's burden is satisfied only if it makes a clear showing with respect to each of the four elements required for injunctive relief. *See Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir.1985). After careful consideration of the arguments and evidence, the Court concludes that Lockheed has failed to make a clear showing that it has a likelihood of success on the merits or that it will suffer irreparable injury if a preliminary injunction is not issued.

## I. *Likelihood of Success on the Merits*

Lockheed contends that injunctive relief is warranted because Raytheon has breached the parties' joint venture agreement, because Raytheon has breached its fiduciary duties to Lockheed as a joint venturer, and because Raytheon has disclosed Lockheed's trade secrets. The Court is not persuaded that Lockheed has a substantial likelihood of success on these claims.

## A. *Breach of Contract and Fiduciary Duties Claims*

Lockheed contends that the parties committed themselves to pursuing all aspects of TOW missile replacement through the joint venture, including both the Follow-on–to–TOW ("FOTT") program and the TOW fire-and-forget ("TOW F & F") program. In support of its argument, Lockheed relies on the language of the parties' 1994 amendment to their 1992 Memorandum of Agreement ("the 1994 agreement"). The 1994 agreement notes that "the [p]arties foresee future business opportunities for the replacement of the TOW missile

system" and that they "accordingly desire to collaborate to define concepts, develop technology, and offer a replacement for the TOW missile to the Army ....." (1994 agreement at 1.) The 1994 agreement further provides as follows:

> The TOW Replacement Program (TR) will be proposed by the Joint Venture organization and fully integrated into the Joint Venture to minimize the need for additional personnel. The Joint Venture organization ... resulting from a win of the TR will remain a 60/40 [Lockheed/Raytheon] work share. Both [Lockheed] and [Raytheon] are exclusively tied to the Joint Venture for this proposal(s).

Thus, Lockheed contends, the parties agreed to pursue TOW replacement only through the joint venture, and Raytheon has breached the parties' contract and the fiduciary duties it owes to Lockheed as a joint venturer by attempting to pursue TOW F & F outside of the joint venture.

The problem with Lockheed's argument, however, is that the parties entered into a new joint venture agreement in 1996 ("the 1996 agreement"). The 1996 agreement provides that "[t]he object and purpose of the [joint venture] is solely limited to pursuing and performing all phases of the JAVELIN program ...." (1996 agreement at 5, ¶ 2.) The agreement contains an integration clause that provides, in pertinent part: "[t]his Agreement ... supersedes any previous understandings, agreements or commitments, oral or written, relating to the Program with respect to the subject matter of this Agreement." (1996 agreement at 25, ¶ 21.) The term "Program (JAVELIN Program)" is defined as "Engineering Manufacturing Development (EMD) and Low Rate Initial Production (LRIP) and full rate production phases ... for the JAVELIN weapon system and any JAVELIN derivatives agreed to in writing between the parties." (1996 agreement 5, ¶ 1G.) The term "JAVELIN Derivative" is further defined as "Follow On To Tow (FOTT) and such other deriva-

tives of JAVELIN as agreed to by the parties." (1996 agreement at 4, ¶ 1G.)

Significantly, the parties did not perpetuate in the 1996 agreement the "TOW Replacement Program" language used in the 1994 agreement. Rather, the 1996 agreement defines Javelin derivative simply as either FOTT or any other Javelin derivative agreed to by the parties. (1996 agreement at 4, ¶ 1G,) Unquestionably, TOW F & F is not FOTT. As a result, Lockheed contends that "such other derivatives agreed to by the parties" as used in the 1996 agreement was intended to refer back to the parties' 1994 agreement to pursue the entire "TOW Replacement Program" through the joint venture.

The Court is unpersuaded by Lockheed's argument. Had these sophisticated parties truly intended in the 1996 agreement to bind themselves to pursuing all TOW replacement programs through the joint venture, they could have easily crafted their definition of the term "JAVELIN derivative" to include that language. They did not do so, but instead referred simply to FOTT and any other derivatives agreed to by the parties. Indeed, nowhere in the 1996 agreement is the "TOW Replacement Program" language perpetuated. Rather, the only specific reference to a TOW replacement program in the entire 1996 agreement is to the FOTT missile. In light of the language of the integration agreement, the court believes that if the parties intended to bind themselves to pursuing all TOW replacement opportunities jointly, they would have included that language in the definition of a Javelin derivative in the 1996 agreement. They did not do so, however, and the Court cannot graft that language into the agreement where the parties themselves failed to do so.

Furthermore, this contention by Lockheed—that the phrase "such other derivatives of JAVELIN as agreed to by the parties," was meant to refer back to the 1994 agreement to pursue the "TOW Replacement Program"—is illogical and would force a redundancy into the docu-

ment. The pertinent definition in the 1996 agreement reads:

*JAVELIN Derivative*—Follow On To TOW (FOTT) and such other derivatives of JAVELIN as agreed to by the parties.

Lockheed's interpretation would render the "FOTT" portion of the definition unnecessary. This is so because "TOW Replacement Program" as used in the 1994 agreement unquestionably included what became FOTT. Thus, if the parties truly intended that the clause "such other derivatives as agreed to by the parties" mean "TOW Replacement Program" as used in the 1994 agreement, there was no need to separately include FOTT in the 1996 agreement's definition of JAVELIN derivative.

Additionally, the failure to perpetuate the 1994 agreement's "TOW Replacement Program" language in the 1996 agreement, and the use of the term "FOTT" in the 1996 agreement instead, is consistent with the events that transpired during the period between the two agreements. At the time of the 1994 agreement, the term "FOTT" had not yet been coined, but the program that ultimately became FOTT was in the initial stages. By the time of the 1996 agreement, the government had begun using the term "FOTT" to describe the missile that would replace the TOW missile. Because the only program that the parties' 1996 agreement specifically refers to by name is "FOTT," it appears that the FOTT program was what they had actually agreed to pursue in the 1994 agreement. Because that term had not been coined at the time of the 1994 agreement, the parties used the "TOW Replacement Program" language instead. Their discontinued use of that language at the time of the 1996 agreement is telling.

Thus, the Court concludes that, at least at this juncture of these proceedings, the language of the 1996 agreement is unambiguous, that it does not commit the parties to pursue all TOW replacement pro-

grams through the joint venture, and that it supersedes any language in the 1994 agreement that is arguably to the contrary. As a result, the Court cannot find that Lockheed has demonstrated a likelihood of success on the merits of its breach of contract and fiduciary duties claims.

### B. Trade Secrets Claim

Lockheed contends that without an injunction, Raytheon will misappropriate both the joint venture's and Lockheed's proprietary information. The Court again finds that Lockheed has failed to demonstrate a likelihood of success on the merits of this claim.

The Court agrees with Raytheon that the joint venture does not own any proprietary information that Raytheon is prohibited from using outside of the joint venture. Though Lockheed may be correct that the joint venture owns proprietary information, that information is proprietary with respect to the outside world, but not necessarily with respect to the joint venturers. Indeed, the parties' Technology Transfer and Cross–License Agreement ("the TTCL agreement") contemplates that the joint venturers can use inventions jointly developed in the course of the joint venture for whatever purpose they so desire, without accounting to the other joint venturer. (Ex. C. to 1996 agreement at ¶ 5.1.) As a result, under the parties' contract, both Lockheed and Raytheon are free to use any inventions developed during the course of the joint venture for whatever purposes they desire. *Cf. Schering Corp. v. Roussel–UCLAF SA*, 104 F.3d 341, 344 (Fed.Cir.1997) (construing 35 U.S.C. § 262, which contains language similar to that used in paragraph 5.1 of the parties' TTCL agreement, as permitting each co-owner of a patent to exploit his rights in the patent in any manner without the consent of the other co-owners). There simply appears to be no agreement between these parties that either party must refrain from using technology jointly developed during the course of the joint venture for non-venture purposes.

The TTCL agreement does protect, however, Lockheed Martin's proprietary information. Nevertheless, Lockheed has failed to demonstrate the Raytheon has improperly disclosed or will necessarily improperly disclose any such information should it compete for TOW F & F business outside of the joint venture. Indeed, the evidence demonstrates that Raytheon and its joint venture employees are taking every step possible to prevent the unauthorized disclosure or use of Lockheed's proprietary information. Without some evidence of negligence or bad faith on the part of Raytheon, the Court is reluctant to simply assume that disclosure and/or use of Lockheed's proprietary information is inevitable, particularly in light of the precautionary measures Raytheon has taken and the fact that it is commonplace for these employees, as members of the defense industry, to deal with and to keep confidential trade secrets.

### II. Irreparable Harm

■ Even assuming Lockheed has demonstrated a likelihood of success on its breach-of-contract and breach-of-fiduciary-duties claims, the Court is not persuaded that it will suffer irreparable injury if an injunction is not issued. The only injury Lockheed will suffer if Raytheon is permitted to engage in the alleged breaches of contract and fiduciary duties is monetary damages. True, the damages would likely be extensive, but "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a[n injunction] are not enough." *Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (interpreting the irreparable injury necessary for interim injunctive relief) (quoting *Virginia Petroleum Jobbers Assoc. v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C.Cir. 1958)).

Similarly, Lockheed has failed to show irreparable injury regarding its trade se-

crets claim, for the same reason that it has failed to demonstrate a likelihood of success on the merits as to that claim. The Court simply is not persuaded that Lockheed has adequately demonstrated that Raytheon has disclosed and/or used Lockheed's proprietary information or that such disclosure and/or use is inevitable.

### III. Conclusion

For the foregoing reasons, the Court concludes that Lockheed's request for preliminary injunctive relief should be and is hereby DENIED, and that the temporary restraining order previously issued by the Court should be and is hereby VACATED.

SO ORDERED.