Charles R. VELDEKENS,
et al., Plaintiffs,

v.

GE HFS HOLDINGS, INC.,
et al., Defendants.

Civ.A. No. H–06–3296.
Adversary No. 05–3772.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 23, 2007.

John F. Higgins, IV, Porter & Hedges, LLP, Houston, TX, for Plaintiff.

R. Paul Yetter, Yetter & Warden, Houston, TX, for Defendant.

## MEMORANDUM OPINION ON THE MOTION TO WITHDRAW THE REFERENCE

HOYT, District Judge.

After considering the applicable law and the parties' arguments before this Court and the Bankruptcy Court, and for the reasons stated below, this Court granted the plaintiffs' motion to withdraw the reference of Adversary Proceeding 05–3772 on December 28, 2006. *See* Dkt. No. 9 (Dec. 28, 2006). This memorandum opinion is submitted in support of that determination.

## I. INTRODUCTION

### A. Summary

This case has a long and complicated factual and procedural history. The dispute predated the main case below by many years, and it continues several months after the debtor's plan of reorganization was confirmed. This Court is in an ideal position to quickly adjudicate the true claims while minimizing the resources spent litigating unnecessary points of law. Though it is possible that a "final" judgment issued by the Bankruptcy Court would ultimately be upheld, the inevitable appeal to this Court and resulting duplication of effort would result in delay, confusion, and frustration. A number of difficult issues will be avoided if this Court adjudicates the case in the first instance.

### B. Background

The plaintiffs, Charles and Ashraf Veldekens, were the owners of a hospital facility located at 510 West Tidwell Road in Houston (the "Tidwell Property"). In January of 1998, the Veldekens leased the Tidwell Property to the debtor in the main case below, Doctors Hospital 1997, L.P., a limited partnership formed to operate a hospital at the Tidwell Property. Subsidiaries of Healthplus Corporation ("Healthplus") owned all of the general and most of the limited partnership interests in the debtor.

Subsequent to that lease, the debtor entered into a number of loan transactions intended (at least in part) to finance renovations to the Tidwell Property. To help the debtor secure this financing, and to obtain the benefit of the proposed renovations, the Veldekens executed a personal guaranty, assigned their rights under the lease, and granted a security interest in the Tidwell Property to and for the debtor's lenders. The lenders, the guaranty, the assignment, and the security interest

were all later acquired by the defendant, GE HFS Holdings, Inc. ("GE").

The Veldekens soon discovered that "[h]e who puts up security for another will surely suffer." *Proverbs* 11:15. The Veldekens were not satisfied with the Tidwell Property construction, and suspected that the debtor and Healthplus were diverting loan funds secured by the Tidwell Property to other construction projects. The dispute came to a head in 2005, when the Veldekens sued the debtor, Healthplus, and GE in state court. *See Veldekens v. Doctors Hosp. 1997, L.P.*, No. 2005–16310 (164th Dist. Ct., Harris County, Tex., filed Mar. 9, 2005). The debtor then filed its voluntary Chapter 11 petition, initiating the main bankruptcy case. *See In re Doctors Hosp. 1997 L.P.*, Case No. 05–35291–H4–11 (Bankr.S.D. Tex. filed Apr. 6, 2005). When the debtor filed its petition, the Veldekens nonsuited the debtor and GE in their state court suit, but attempted to maintain the case against Healthplus. *See* Compl. ¶ 55, *Doctors Hospital 1997 L.P. v. Veldekens* (*In re Doctors Hosp. 1997, L.P.*), Case No. 05–35291–H4–11, Adv. No. 05–3315 (May 6, 2005). However, the Bankruptcy Court stayed the state court proceedings against Healthplus, and that case was eventually docketed in the Bankruptcy Court as Adversary Proceeding No. 05–3513.

## C. Adversary Proceeding No. 05–3772

In August of 2005, the Veldekens filed a second state court action asserting the same or similar claims against GE. On September 30, 2005, GE removed the suit to federal court based on complete diversity and on bankruptcy jurisdiction. *See Veldekens v. GE HFS Holdings, Inc.*, No. 4:05–CV–3381 (S.D.Tex. Oct. 18, 2005) (Gilmore, J.). On October 14, 2006, the Veldekens and GE jointly filed a motion to refer that action to the Bankruptcy Court:

Currently Pending before the U.S. Bankruptcy Court ... is a Chapter 11

bankruptcy, [the Main Case]. Doctors Hospital 1997, L.P. is the lessee of the real property which is the subject of this case. Further, already pending in Bankruptcy Court is [AP 3315], in which [the Veldekens] assert claims similar to the ones [the Veldekens] brought in this matter. The parties agree that the Bankruptcy Court is the appropriate forum to resolve the parties' dispute.....

"The parties agree that the Bankruptcy Court may hear and determine this case, and may enter appropriate final orders or judgment, pursuant to 28 U.S.C. § 157. To the extent necessary, the parties consent to the entry of final orders or judgment in this case by the Bankruptcy Court."

Agreed Mot. for Referral to Bankr.Ct. ¶¶ 2–3, *Veldekens v. GE HFS Holdings, Inc.*, Case No. 4:05–CV–3381 (S.D. Tex. filed Oct. 14, 2005). Judge Gilmore granted the motion, and the case was docketed as Adversary Proceeding No. 05–3772. The present motion arises out of that proceeding.

The Bankruptcy Court presided over a number of preliminary matters, including the Veldekens' motion to join the non-diverse defendants Newbanks, Inc., and Thomason. On December 5, 2005, after a full-day hearing, the court denied the Veldekens' request for a preliminary injunction preventing GE from foreclosing on the Tidwell Property. Shortly thereafter, GE foreclosed its lien.

All of the defendants filed answers: GE on November 28, 2005, Newbanks on December 15, 2005, and Thomason on May 30, 2006. Each of the defendants also filed motions for summary judgment, and those motions have been fully briefed before the Bankruptcy Court. However, the Bankruptcy Court not addressed the summary judgment motions pending this Court's

resolution of the motion to withdraw the reference.

### D. Confirmation of the Plan and the Present Motion

Though the Veldekens had filed claims against the debtor and initially opposed the proposed plan of reorganization, they eventually withdrew all claims against the debtor and all objections to the plan. On May 8, 2006, the Bankruptcy Court entered an order confirming the debtor's second amended plan of reorganization. On May 16, the Veldekens filed the present motion. The Bankruptcy Court held two hearings related to jurisdiction, abstention, and withdrawal, and the parties extensively briefed the various issues. The Bankruptcy Court issued its order denying abstention on October 5, 2006. *See Veldekens v. GE HFS Holdings Inc. (In re Doctors Hosp. 1997, L.P.)*, 351 B.R. 813 (Bankr.S.D.Tex.2006). On the same day, the court issued its report on the present motion recommending that this court deny withdrawal.

### II. LEGAL STANDARD

■ "The district court may withdraw, in whole or in part, any case or proceeding referred [to the Bankruptcy Court], on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d) (2000). The decision to grant or deny this motion is committed to the discretion of the district court. *See* Bankr.R. 5011(a); *see also Mirant Corp. v. Potomac Elec. Power Co.*, 197 Fed.Appx. 285, 294 (5th Cir.2006) ("Matters under Chapter 11 are within the district court's original jurisdiction, and reference to and withdrawal from the bankruptcy court of bankruptcy matters is left to the discretion of the district court."). The Fifth Circuit has provided only "general principles that should guide the district court in determining whether to refer or withdraw the reference." *Holland Am. Ins. Co. v. Succes-*

*sion of Roy*, 777 F.2d 992, 998 (5th Cir. 1985); *see also In re Lieb*, 915 F.2d 180, 184 (5th Cir.1990). The district court's decision to grant or deny withdrawal is not itself appealable, but the Court of Appeals can review the decision on direct appeal from a subsequent final judgment. *In re Lieb*, 915 F.2d at 184; *compare In re El Paso Elec. Co.*, 77 F.3d 793, 795 (5th Cir. 1996) (denial of motion to withdraw can be certified for appeal under § 1292(b)). The decision to withdraw a reference "must be based on a sound, articulated foundation," at least when the case adjudicates the relative rights of the debtor and its creditors. *Holland Am.*, 777 F.2d at 998.

### III. SUBJECT MATTER JURISDICTION

■ "Federal courts must be assured of their subject matter jurisdiction at all times." *Blake v. Evans (In re Canion)*, 196 F.3d 579, 584 (5th Cir.1999). Because the Veldekens' combined motion challenged the jurisdiction of both the District Court and the Bankruptcy Court, the issues should be addressed separately. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 91 (5th Cir.1987) ("In this case, we must decide two issues: first, whether bankruptcy jurisdiction exists; second, if jurisdiction does exist, whether the bankruptcy court may proceed over this matter as a 'core' or a 'non-core' proceeding.").

The Veldekens do not contend that this Court never had jurisdiction over the present case. Their current position as to jurisdiction as of the date of removal is unclear, though at the time they did not seek a remand. They even joined in the motion to refer the case to the Bankruptcy Court, which asserted bankruptcy jurisdiction. But they argue that post-removal developments destroyed any subject matter jurisdiction that might have existed, whether based on diversity or on bank-

ruptcy. Alternatively, they argued below that post-removal developments created an obligation to abstain and remand this action to state court.

### A. Diversity Jurisdiction

Recall that this case was originally removed based on both complete diversity and bankruptcy jurisdiction. Diversity jurisdiction is an independent basis for district court jurisdiction, and, if this suit included only the original parties, this Court's jurisdiction would be established without the need to adjudicate difficult questions about bankruptcy jurisdiction and abstention. The Bankruptcy Court permitted the joinder of Thomason and Newbanks before any party had raised doubt about bankruptcy jurisdiction. *See* Adversary Proc. 05–3772, Dkt. No. 8 (Nov. 1, 2005). On January 10, 2007, after the reference was withdrawn, this Court *sua sponte* dismissed the non-diverse defendants Thomason and Newbanks. *See* Dkt. No. 12 (Jan. 10, 2006). Because there is complete diversity among the parties, this Court has subject matter jurisdiction. § 1332.

### B. Bankruptcy Jurisdiction

■ Without a doubt, this Court also had bankruptcy jurisdiction under § 1334 as of the date of removal. A district court has jurisdiction over any proceeding that is at least "related to" a pending bankruptcy, which means any proceeding in which "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *FDIC v. Majestic Energy Corp. (In re Majestic Energy Corp.)*, 835 F.2d 87, 90 (5th Cir.1988). When the case was removed, the Veldekens were the debtor's landlords, and they were suing GE to cancel GE's lien on the Tidwell Property and to rescind their assignment of the debtor's

lease. If successful, GE would have no further right to collect rent payments from the debtor, and the Veldekens would be free to evict the debtor (as they had attempted to do immediately prior to the filing of the main case). *See* First Obj. to Report And Recommendations ¶ 6. Clearly, the outcome of this suit could have affected both the debtor's rights and obligations under the lease as well as the administration of the estate. The subsequent history of the case proves this point: because the Veldekens were unsuccessful at obtaining a preliminary injunction, GE foreclosed its lien and the Veldekens were, for all practical purposes, deposed as landlords. Similarly, if the Veldekens had been ultimately successful in the suit prior to confirmation of the plan, they might have evicted the debtor. As of the date of removal, this case was (at the very least) "related to" the main bankruptcy case when it was removed. Therefore, this Court had jurisdiction under § 1334.

### C. Post–Confirmation Jurisdiction

While not specifically contesting bankruptcy jurisdiction at removal, the Veldekens point to a series of Fifth Circuit opinions describing limitations on post-confirmation bankruptcy jurisdiction. *See Craig's Stores of Tex., Inc. v. Bank of La. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390–91 (5th Cir.2001) (holding that post-confirmation jurisdiction exists only "for matters pertaining to the implementation or execution of the plan."); *see also First Am. Title Ins. Co. v. First Trust Nat'l Assoc. (In re Biloxi Casino Belle, Inc.)*, 368 F.3d 491, 496 n.4 (5th Cir.2004) (finding that the district court had jurisdiction under the *Craig's Stores* test) and *U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 304–05 (5th Cir.2002) (same). Because this Court has withdrawn the reference, and because com-

plete diversity provides an independent basis for district court jurisdiction, this issue need not be finally adjudicated. However, a brief discussion of the Veldekens' position and the Bankruptcy Court's response is needed as a context for the discussion on the merits of the motion.

■ In general, subject matter jurisdiction "is to be assessed at the time the lawsuit is commenced" and thus subsequent developments do not divest the district court of jurisdiction *Freeport–McMo-Ran, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 429, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) (holding that substitution of non-diverse defendant under Rule 25 did not destroy diversity jurisdiction). There are limited exceptions to the general rule. For example, if federal jurisdiction is based solely on diversity of citizenship, joinder of a non-diverse party under Rule 19 destroys diversity, and typically requires remand to state court. *Cobb v. Delta Exports, Inc.,* 186 F.3d 675 (5th Cir.1999) (interpreting § 1447(e) and limiting *Freeport* to substitution under Rule 25).

The Veldekens insist that the emerging limitation on post-confirmation bankruptcy jurisdiction is another exception to *Freeport's* general rule. In other words, they argue that confirmation of a plan of reorganization actually destroys pre-existing bankruptcy jurisdiction over a pending adversary proceeding unless it "pertain[s] to the implementation or execution of the plan." *Craig's Stores,* 266 F.3d at 390; but *cf. Arnold v. Garlock, Inc.,* 278 F.3d 426, 434 (5th Cir.2001) (stating that bankruptcy jurisdiction is tested "at the time the case was referred to the bankruptcy court."). But the Bankruptcy Court concluded that *Craig's Stores* and its progeny would only apply to suits filed after confirmation; confirmation would have no jurisdictional effect on suits already pending in bankruptcy. 351 B.R. at 836–37; *but see*

*id.* at 837 n. 20. The court also concluded that it would have jurisdiction even if *Craig's Stores* applied to the present case.

Because this Court has subject matter jurisdiction separate and apart from § 1334, there is no need to reach this issue. The issue is certainly important, but its resolution is jurisprudentially unnecessary. This approach promotes judicial economy and provides the best opportunity for appellate clarification of post-confirmation jurisprudence.

## IV. MERITS OF THE MOTION

■ In determining whether to grant a motion to withdraw the reference, this Court "must keep one eye cocked toward" the constitutional limitations on bankruptcy court jurisdiction. *Holland America,* 777 F.2d at 998. "The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *Id.* at 999. The Court should also consider whether either party has made a jury demand. *Id.*

### A. The Proceeding is Non–Core

The "starting point" in evaluating this motion "is a determination of whether the proceeding is core or non-core." *Mirant Corp. v. The Southern Co.,* 337 B.R. 107, 115–16 (N.D.Tex.2006) (footnotes omitted) (granting motion for withdrawal), *aff'd sub nom., Mirant Corp.,* 197 Fed.Appx. 285. This is because "[t]he core versus non-core classification determines whether the bankruptcy court has adjudicatory jurisdiction (in core proceedings), or has a restricted judicial role (in non-core proceedings)." *Id.* (citations omitted).

■ Though the Veldekens originally asserted that the proceeding was core in the joint motion to refer, they now insist

that it is non-core. However, the nature of the action is controlling, not the parties' characterization.

> If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding, for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*Wood,* 825 F.2d at 97. The case at bar neither involves a right created by bankruptcy law, nor is it "one that would arise only in bankruptcy." It existed outside of bankruptcy until the defendants removed it to federal court.

■ The Bankruptcy Court concluded that the proceeding was core under § 157(b)(2)(K), which lists as core those disputes involving "determinations of the validity, extent, or priority of liens." *See* Report at 19–21. Manifestly, this does not create core jurisdiction over all liens whenever and by whomever acquired, but only applies to liens on property of the estate and (possibly) on non-estate property of the debtor. *See id.* at 19–20 (and cases cited). However, the Bankruptcy Court's interpretation would extend the scope of § 157(b)(2)(K) even further, to include non-estate property of the reorganized debtor, acquired after confirmation, at least where such property was "vital to the success of the plan." *Id.* at 21. But this runs afoul of the Court of Appeal's guidance in *Wood,* and implicates the concerns about post-confirmation jurisdiction dis-cussed above. The proceeding is certainly "related to the bankruptcy because of its potential effect," but it is non-core. *Wood,* 825 F.2d at 97; *compare* Report at 21 n. 13.

### B. Confusion, Economy, and Efficiency

When considering a motion to withdraw, the district court should seek to promote efficiency and economy while reducing potential confusion. *Holland Am.,* 777 F.2d at 999. Typically, a bankruptcy court is in the best position to efficiently dispose of cases because of its specialty, experience, and familiarity with the underlying facts. In this case, however, the jurisdictional issues have already resulted in voluminous briefs and lengthy hearings, and if the Bankruptcy Court issues a final judgment, all of its jurisdictional conclusions would be subject to review on appeal. Because of this Court's ability to expeditiously render a final judgment free of most jurisdictional objections, efficiency and economy weigh in favor of granting the motion. These concerns would not justify withdrawal in every instance, but in the unique factual situation presented here, efficiency and economy dictate withdrawal of the reference.

### C. Jury Demand

Except under the limited circumstances set out in § 157(e), a bankruptcy court cannot conduct a jury trial. Therefore, when considering a motion to withdraw, the district court should consider whether any party has made a demand for a jury trial. *Holland Am.,* 777 F.2d at 999. In this case, the Veldekens demanded a jury trial in their state court petition. The court in *Mirant* accurately stated the law:

> the court will not presume that a litigant has knowingly and willfully surrendered its constitutional right to a jury trial for

the resolution of disputes that are only incidentally related to the bankruptcy process. And, as the Supreme Court has made clear, any waiver of constitutional rights must be voluntarily, intelligently, and knowingly made. In keeping with those principles, the Supreme Court consistently has held that courts must indulge in a presumption against waiver of the Seventh Amendment right to a jury trial.

337 B.R. at 121 (citations omitted). That presumption has not been overcome in the present case. The Veldekens' consented to final adjudication in the Bankruptcy Court, but they renewed their demand for a jury trial in the first amended complaint. Though some of their actions before the Bankruptcy Court might be construed as inconsistent with an intention to seek a jury trial, the record does not disclose a true voluntary, intelligent, and knowing waiver. Also, *Holland America* does not require a final determination of the Seventh Amendment right. The Veldekens demanded a jury trial, that demand is not obviously invalid, and the requirements of § 157(e) have not been satisfied. Therefore, this factor weighs in favor of granting the withdrawal.

### D. Forum Shopping

The Bankruptcy Court found that

the single most important *Holland America* factor in this matter is the blatant forum shopping. Even if more than one of the other *Holland America* factors actually favored a withdrawal of the Referral Order, the eleventh-hour attempt to forum shop, and all the additional attorneys' fees and time that would be associated with another court adjudicating this suit, weigh heavily in favor of denying withdrawal of the Referral Order.

Report at 36. When denying the Veldekens' motion to abstain, the Court used even stronger language: "[p]arties who fo-

rum shop in an effort to get a second bite at the litigation apple must be stopped in their scheming tracks." 351 B.R. at 841. The court noted that the Veldekens originally agreed to the referral, consented to that court's entry of final judgment, and participated extensively both in the main case and in the adversary proceeding. They did not file the present motion until after their motion for preliminary injunction had been denied and only days before a scheduled hearing on the defendants' motions for summary judgment.

This is a somewhat delicate matter for the Veldekens. In some sense, any party who objects to Bankruptcy Court adjudication is forum shopping. Here, the accusation seems fitting because the Veldekens originally consented to referral and to final-judgment authority. They only sought abstention and referral after their motion for a temporary restraining order was denied. Considered alone, this suggests that they were merely looking for "a second bite at the litigation apple." 351 B.R. at 851. On the other hand, the Veldekens' relationship to the debtor and the estate changed when GE foreclosed its lien. The relationship changed again, or perhaps the change initiated by the foreclosure intensified, when the plan was confirmed. In the Veldekens' eyes, the changed relationship altered their rights and preferences as to Bankruptcy Court adjudication. Their jurisdictional arguments, though ultimately unsuccessful, appear to be submitted in good faith. A good faith claim of right, even when motivated (at least in part) by a desire for a more favorable decision maker, should *not* on that basis alone be denied as forum shopping.

Finally, the Veldekens' consent alone does not serve as a complete bar to withdrawal. The Veldekens' motion to refer waived any constitutional objection to final adjudication by the Bankruptcy Court.

"Once a right, even a fundamental right, is knowingly and voluntarily waived, a party has no constitutional right to recant at will." *Carter v. Sea Land Servs., Inc.*, 816 F.2d 1018, 1021 (5th Cir.1987) (discussing a party's consent to final adjudication by a magistrate). However, Congress has provided an outlet for parties like the Veldekens who originally consent to adjudication in an adjunct court, but later seek a trial in the district court.

When a party consents to magistrate adjudication, they must file a motion to withdraw their consent. *Id.* Likewise, a party who consents to final adjudication by the Bankruptcy Court must file a motion to withdraw the reference. In either situation, the party must show "good cause." *Id.; compare* § 157(d) and *Holland Am.*, 777 F.2d at 998–99. In the present case, "good cause" includes a material change in the circumstances that led the party to consent in the first instance. When the Court considers the goal of reducing forum shopping along with the other *Holland America* factors, the balance weighs in favor of granting the motion.

## V. CONCLUSION

Though the jurisdictional issues under §§ 1334 and 157 are important and need further clarification from the Court of Appeals, the issues are unnecessary in this case. Because the District Court has jurisdiction under § 1332, and because this Court can expeditiously decide the matter free of most jurisdictional objections, the Veldekens have shown good cause to withdraw the reference. Having considered the governing law and the parties' arguments, and for the reasons stated above, this Court granted the motion on December 28, 2006.