### In re F. Joseph MORRISON, et al., Debtors.

### F. Joseph Morrison, et al., Plaintiffs,

### v.

### Amway Corporation, et al., Defendants.

**Bankruptcy Case No. 05–45926.
Adversary No. 08–3260.
Civil Action No. H–09–2039.**

United States District Court,
S.D. Texas,
Houston Division.

July 1, 2009.

Timothy Allen Tyler, Bellaire, TX, for Debtors.

## MEMORANDUM AND ORDER

NANCY F. ATLAS, District Judge.

This Bankruptcy adversary case is before the Court on Defendants' Motion to Withdraw the Reference ("Motion") [Doc. # 2]. Defendants argue that the Court should withdraw the reference to the Bankruptcy Court of the adversary case pursuant to the permissive withdrawal provision of Bankruptcy Code § 157(d). Defendants argue that the adversary is non-core, that the District Court can handle the adversary more efficiently because it is already familiar with the seminal *Morrison v. Amway Corp.* case (Civil Action No. H–98–352), that withdrawal will expedite closure of Plaintiffs' individual bankruptcy cases, and that withdrawal will prevent forum shopping and inconsistent decisions. United States Bankruptcy Judge Marvin Isgur, in a detailed and thoughtful Report and Recommendation, has recommended that the Motion be denied. *See* Report and Recommendation [Doc. # 1].

The factors to be considered when determining whether to exercise permissive withdrawal of the reference of an adversary proceeding are: (1) whether the issues are core or non-core; (2) whether withdrawal would foster a more economical use of the parties' resources; (3) whether withdrawal would expedite the bankruptcy process; (4) whether withdrawal reduces forum shopping and confusion; (5) whether jury demands have been made; and (6)

whether withdrawal would promote uniformity in bankruptcy administration. *See Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 999 (5th Cir.1985). The party seeking withdrawal of the reference has the burden of establishing a "sound articulated foundation" for permissive withdrawal. *See id.* at 998.

■ Judge Isgur noted that although Defendants may assert counterclaims raising core matters, core claims at this early stage of the adversary proceeding are hypothetical and, even if raised, would not predominate over the non-core issues. This, however, is the only factor that favors permissive withdrawal of the reference.

Defendants' argument that the District Court can handle the case more efficiently because of its familiarity with the underlying case incorrectly assumes that the Hon. Melinda Harmon, the district judge who presided over the *Morrison* case, will preside over this adversary proceeding if the reference is withdrawn. Defendants concede that the *Morrison* case and this adversary proceeding would not be subject to consolidation and would need to be resolved separately. Judge Isgur noted that there was no assurance that the withdrawn adversary proceeding would be assigned to Judge Harmon and, indeed, it is now clear that it will not be. Judge Isgur has far more familiarity with the adversary proceeding that the undersigned and, therefore, this factor favors denying the request for permissive withdrawal.

Defendants also argue that permissive withdrawal of the adversary proceeding will expedite the completion of Plaintiffs' individual bankruptcy cases. As Judge Isgur noted, there is nothing to suggest that withdrawing the reference will affect the progress of the individual bankruptcy cases. As a result, the desire to expedite the bankruptcy process does not favor withdrawal of the reference.

The factor regarding forum shopping and confusion also weighs against permissive withdrawal. Defendants suggest that Plaintiffs are forum shopping—filing the adversary proceeding in bankruptcy court to avoid an unfavorable judge. As Judge Isgur noted, however, Plaintiffs could make the same argument—that Defendants are seeking withdrawal of the reference in an attempt to have this adversary proceeding by the district judge who previously issued favorable rulings. The adversary proceeding and the *Morrison* case will be handled by different judges regardless of whether the reference of the adversary proceeding is withdrawn. Consequently, withdrawal of the reference would not reduce either forum shopping or any theoretical risk of inconsistent decisions.

The final two factors do not favor permissive withdrawal. Plaintiffs have withdrawn their jury demand, and there is no argument that withdrawal of the reference will promote uniformity in bankruptcy administration.

This Court agrees with Judge Isgur's analysis and conclusions regarding the § 157(d) factors for permissive withdrawal of the reference. Defendants have failed to satisfy their burden to establish a "sound articulated foundation" for permissive withdrawal of the reference. As a result, for the reasons set forth herein and in Judge Isgur's Report and Recommendation, it is hereby

**ORDERED** that the Motion to Withdraw the Reference [Doc. # 2] is **DENIED** and this civil case is **DISMISSED.**

## *REPORT AND RECOMMENDATION*

ISGUR, United States Magistrate Judge.

### Background

Plaintiffs are former distributors for Amway Corporation ("Amway"). Distribu-

tors sold Amway's line of household products and recruited additional distributors. Distributors derived profits from their individual sales and from the sales of the recruited distributors. Recruited distributors are called "down-liners" and the recruiting distributors are called "up-liners."

In January of 1998, Plaintiffs filed a state court lawsuit alleging that Amway, related entities, and up-liners were improperly calculating distributions ("the Amway Defendants").[1] Plaintiffs' claims ranged from defamation to RICO. The Amway Defendants removed the lawsuit to the Federal District Court and sought to stay the lawsuit to enforce the arbitration clause in their contracts with Plaintiffs.[2]

All distributors had to execute a Distributorship Agreement Application. Under the Distributorship Agreement, distributors agreed to abide by Amway's Regulations and Rules of Conduct for Distributors, and any amendments to those Rules and Regulations. Distributors were required to renew the agreement annually by signing either an automatic renewal agreement or an annual "Intent to Continue" form.

In September of 1997, Amway announced it was instituting a new arbitration program. Amway required distributors to sign an "Acknowledgment Form" or "Intent to Continue Form" containing a new arbitration provision. The arbitration provision required mandatory arbitration of "any ... claim or dispute arising out of or relating to [an] Amway distributorship, the Amway Sales and Marketing Plan, or the Amway Rules of Conduct (including any claim against another Amway distributor, or any such distributor's officers, directors, agents or employees, or against Amway Corporation, or any of its officers, directors, agents or employees)." However, the Acknowledgment Form also stated that the arbitration provision "automatically became part of your agreement with Amway." Most Plaintiffs did not sign the Acknowledgment Form.

In the Federal District Court, Plaintiffs challenged the enforceability of the arbitration provisions. Plaintiffs alleged that only one-third of Plaintiffs had executed the Acknowledgment Form and that even if Plaintiffs had executed an agreement that incorporated the arbitration provision, the provision was unconscionable and therefore unenforceable. The District Court rejected Plaintiffs' arguments and issued a memorandum opinion and order staying the lawsuit pending arbitration. *Morrison v. Amway Corp.*, 49 F.Supp.2d 529 (S.D.Tex.1998). The District Court found that Plaintiffs had agreed to the arbitration provision through execution of the Distributorship Agreements. *Id.* at 533. The District Court noted that the Distributor Agreements required distributors to abide by Rules of Conduct and other rules, requirements, and regulations, as amended from time to time. *Id.* The District Court reasoned that the arbitration provision constituted a rule, requirement, or regulation under the Distributor Agreement. *Id.*

---

1. The Amway Defendants include: Amway Corporation, Dexter Yager individually and doing business as Yager Enterprises and Internet Services Corporation, Jeff Yager, Donald Wilson individually and doing business as Wow International and Wilson Enterprises, Inc., Randy Haugen, John Sims, Jody Victor, and The International Business Owner's Association International.

2. Two separate state court lawsuits were filed, asserting similar claims. The parties refer to one suit as the Morrison Suit and the second suit as the Hamilton Suit. The suits remain separate suits in the District Court but members from both groups have joined this complaint. The present adversary proceeding includes parties from both suits.

388

The District Court also held that the arbitration provision was not unconscionable. *Id.* at 533–34. The District Court found that Plaintiffs failed to demonstrate that Amway coerced the arbitration provision upon Plaintiffs through excessive bargaining power or greater sophistication. *Id.* at 534. Nor did Plaintiffs demonstrate that the substance of the arbitration provision was without any legitimate commercial purpose such that no reasonable person would agree to such a provision. *Id.*

The parties pursued arbitration from 2001 to 2004. After three weeks of evidentiary hearings and post-hearing briefing, the arbitrator found for Plaintiffs on the Amway Defendants' counterclaims and for the Amway Defendants on Plaintiffs' claims. Accordingly, the arbitrator found that both Plaintiffs and the Amway Defendants were prevailing parties entitled to legal fees. After an evidentiary hearing on legal fees, the arbitrator awarded legal fees of approximately $1,000,000.00 to Plaintiffs and legal fees of approximately $7,000,000.00 to the Amway Defendants. The arbitrator awarded the Amway Defendants a judgment in the amount of the difference, approximately $6,000,000.00. The judgment was awarded against all Plaintiffs, with joint and several liability.

Plaintiffs filed a motion to vacate the $6,000,000.00 judgment, alleging that the arbitrator had an impermissible conflict because she was trained by the Amway Defendants. On September 15, 2005, the District Court issued an order denying the motion. *Morrison v. Amway,* Civil Action No. H–98–0352 (S.D.Tex. Sept. 15, 2005). The District Court reasoned that Plaintiffs knew or should have known that the arbitrator was selected and trained by the Amway Defendants. *Id.* Because Plaintiffs knew or should have known of a potential conflict before the arbitrator awarded the

judgment, the District Court held that Plaintiffs waived their objections. *Id.*

Numerous Plaintiffs filed individual bankruptcy petitions in response to the judgment. Amway or its successor in interest, Alticor, filed proofs of claim in the individual bankruptcy cases for the full amount of the judgment.

Plaintiffs also appealed the District Court orders staying litigation and denying the motion to vacate. On February 6, 2008, the Fifth Circuit reversed the District Court's orders. *Morrison v. Amway Corp.,* 517 F.3d 248 (5th Cir.2008). The Fifth Circuit held that the arbitration provision was unenforceable because Amway could unilaterally amend the provision and make the amendment retroactive. *Id.* at 254–57. The Fifth Circuit remanded the lawsuit back to the District Court. *Id.* at 258.

### Pending Bankruptcy Adversary Proceeding

On July 21, 2008, Plaintiffs filed this adversary proceeding. Plaintiffs allege that the Amway Defendants:

- Conspired to insulate themselves from liability to Plaintiffs by establishing an arbitration scheme that ensured Plaintiffs' claims would be denied.
- Selected and indoctrinated the arbitrator to ensure a favorable ruling.
- Failed to disclose the nature of the selection or training process or the fact that Plaintiffs could be held liable for the Amway Defendants' arbitration costs.

Plaintiffs allege that if they had known these undisclosed facts, that they would have dismissed their claims rather than pursuing them in arbitration. After the arbitrator awarded the judgment, Plaintiffs allege that the Amway Defendants' attempts to enforce the judgment forced Plaintiffs into bankruptcy and caused fi-

nancial losses. Plaintiffs allege that the Amway Defendants offset the now-vacated judgment by refusing to pay Plaintiffs' commissions and thereafter refused to renew Plaintiffs' Distributor Agreements.

Based on the Amway Defendants' alleged scheme to defraud Plaintiffs of their claims and the Amway Defendants' subsequent attempts to enforce the vacated arbitration judgment, Plaintiffs assert the following causes of action: fraud, misrepresentation, negligent misrepresentation, breach of contract, breach of fiduciary duty, breach of duty of good faith and fair dealing, conspiracy, joint enterprise, and conversion. Plaintiffs seek actual damages, legal fees and costs, and exemplary damages.

### Scope of this Memorandum Opinion

In response to Plaintiffs' complaint, the Amway Defendants filed motions to withdraw the reference and motions to dismiss. On December 8, 2008, the Court held a hearing on the motions. Various supplemental briefs and an amended complaint were filed after the hearing. The Court resolved the Amway Defendants' motions to dismiss by a separate Memorandum Opinion. This Report and Recommendation considers only the Amway Defendants' motions to withdraw the reference.

The Amway Defendants argue that the reference should be withdrawn based on the permissive withdrawal provision of § 157(d) of the United States Code. The Amway Defendants contend that the factors considered when analyzing permissive withdrawal all favor withdrawal. Particularly, the Amway Defendants argue that: the adversary is non-core; the District Court can more efficiently resolve the adversary given its familiarity with the case; and withdrawal will expedite closure of Plaintiffs' individual bankruptcy cases.

The Court finds that the Amway Defendants have not met their burden to establish "cause" for withdrawal. All the permissive withdrawal factors are neutral with respect to withdrawal except for the core versus non-core claims factor. This factor, alone, is insufficient to justify withdrawal. The Court recommends that the District Court deny the Amway Defendants' motions to withdraw the reference.

### 28 U.S.C. § 157(d)

The permissive withdrawal provision of § 157(d) provides: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

In the Fifth Circuit, courts consider six factors when evaluating whether the moving party has demonstrated "cause" for withdrawal of the reference:

- core versus non-core matters;
- fostering the economical use of the debtors' and creditors' resources;
- expediting the bankruptcy process;
- reducing forum shopping and confusion;
- whether jury demands have been made; and
- promoting uniformity in bankruptcy administration.

*Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir.1985); *Levine v. M & A Custom Home Builder & Developer*, 400 B.R. 200, 2008 WL 5082400 (S.D.Tex. Nov.25, 2008); *Veldekens v. GE HFS Holdings, Inc.*, 362 B.R. 762, 767 (S.D.Tex.2007).

The party seeking withdrawal of the reference bears the burden of establishing grounds for permissive withdrawal. *Vicars*, 96 F.3d at 953. "Cause" for withdrawal "can exist only if premised upon a 'sound articulated foundation.' " *Vela v. Enron Oil & Gas Co.*, 2007 WL 1564562 at

\* 2 (S.D.Tex. May 29, 2007) (quoting *Holland Am.,* 777 F.2d at 998).

The Court evaluates the permissive withdrawal factors separately below.

### i. Core versus Non–Core Issues

Section 157(b) of Title 28 of the United States Code defines core and non-core proceedings. 28 U.S.C. § 157(b). Section 157(b)(2)(A)-(P) list specific examples of core proceedings. Even if a matter falls within the literal language of § 157(b)(2)(A)-(P), the matter must also arise under Title 11 or arise in a Title 11 bankruptcy case. The Fifth Circuit has defined core versus non-core matters consistent with § 1334(b)'s jurisdictional grants of authority. *Wood v. Wood (In re Wood),* 825 F.2d 90 (5th Cir.1987). Core proceedings concern matters that arise under title 11 or arise in a bankruptcy case under title 11. *Id.* at 96–97. A case arises under title 11 "[i]f the proceeding involves a right created by the federal bankruptcy law." *Id.* at 97. A case arises in a case under title 11 "[i]f the proceeding is one that would arise only in bankruptcy." *Id.* "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding . . . under § 157(c)(1) it is an 'otherwise related' or non-core proceeding." *Id.*

Plaintiffs assert the following claims: fraud, breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, conspiracy to commit fraud, joint enterprise, and conversion. The claims are non-core. None arise under the Bankruptcy Code or could only arise in a bankruptcy case. All are state law causes of action that can arise outside of bankruptcy.

Plaintiffs contend that the claims are nevertheless core because some claims re-quest turn-over of withheld commissions, damages for lost profits, and restoration of distribution agreements, all of which would increase bankruptcy estate assets. Plaintiffs contend that these claims fall under § 157(b)(2)(C), (E), and (O). Plaintiffs' characterizations are without merit.

Section 157(b)(2)(C) classifies as core claims "counterclaims by the estate against persons filing claims against the estate." Plaintiffs' adversary is not a counterclaim. Though Amway filed proofs of claims, the claims have subsequently been withdrawn.

Section 157(b)(2)(E) encompasses "orders to turn-over property of the estate." Section 157(b)(2)(E) only applies to claims for turnover of property *owned* by the debtor rather then claims for amounts *owed* to the debtor. *John Hancock Mutual Life Ins. Co. v. Watson (In re Kincaid),* 917 F.2d 1162, 1165 (9th Cir.1990) (distinguishing between cases in which the trustee was "seeking to obtain *property of* the debtor" opposed to "seeking to obtain *property owed to* the debtor"). None of Plaintiffs' claims seek turnover of property owned by the debtor and held by a third-party or seek an adjudication of Plaintiffs' interest in property held by a third-party. Plaintiffs' claims only seek damages for amounts alleged *owed* by the Amway Defendants to Plaintiffs based on tort or contract liability for fraud, breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, conspiracy to commit fraud, joint enterprise, and conversion. Plaintiffs' claims do not fall under § 157(b)(2)(E).

Broadening § 157(b)(2)(E) to include any damages remedy a party seeks would conflict with the Supreme Court's *Marathon* decision. *N. Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (U.S.1982). In *Marathon,* the defendant challenged the

constitutionality of a bankruptcy court's authority to exercise full Article III judicial power over breach of contract, warranty, misrepresentation, coercion, and duress claims asserted against defendant. *Id.* at 56–57. These state law claims would affect the debtor's estate and fall under the literal language of § 157(b)(2)(E) in that they could lead to a judgment that would increase estate assets. Yet the *Marathon* Opinion explicitly stated that bankruptcy courts could not exercise Article III judicial power with respect to pure state law claims that involved purely private rights unrelated to the bankruptcy process. The Court held:

> But the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a "public right," but the latter obviously is not.

*Id.* at 71. Accordingly, if § 157(b)(2)(E) were read to include any money damages that may be owed to the debtor at the conclusion of litigation, then bankruptcy courts would issue final orders on the very state law claims implicated in *Marathon.*

Nor do Plaintiffs' claims fall under § 157(b)(2)(O), which encompasses "proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." Again, pursuant to the Supreme Court's *Marathon* decision, § 157(b)(2)(O) cannot be broadened to include Plaintiffs' state law claims. Virtually any state-law causes of action could affect estate assets and the adjustment of debtor-creditor relations, including the state-

law causes of action implicated in *Marathon.* Under *Marathon*, § 157(b)(2)(O) issues must be limited to claims that arise under title 11 or arise in a case under title 11 in addition to having an affect on estate assets and debtor-creditor relations. *In re Wood,* 825 F.2d at 96–97; *Barnett v. Stern,* 909 F.2d 973, 981 (7th Cir.1990); *Mirant Corp. v. S. Co.,* 337 B.R. 107, 116 (N.D.Tex. 2006). Accordingly, the Court finds that Plaintiffs assert only non-core claims.

Nevertheless, portions of the adversary proceeding may involve core matters. Claims against a bankruptcy estate are core matters. 28 U.S.C. § 157(b)(2)(B). Section 157(b)(2)(B) includes claims asserted in adversary proceedings in addition to proofs of claim. *State Farm Mutual Auto. Ins. Co. v. Wilkins,* 242 Fed. Appx. 183, 186 (5th Cir.2007) (citing *In re Case,* 937 F.2d 1014, 1020 (5th Cir.1991); *Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183, 190 (5th Cir.1990)). Though neither Amway nor its successor in interest currently has a proof of claim filed in any of Plaintiffs' bankruptcy cases,[3] the Amway Defendants may assert counterclaims. The Amway Defendants have yet to file an answer. However, during the December 8 hearing, the Amway Defendants would not affirmatively state that they would not assert counterclaims against Plaintiffs, particularly, counterclaims for legal fees.

If the Amway Defendants assert counterclaims, this adversary proceeding implicates both non-core and core matters. Because the term "proceedings" refers to individual claims, courts must consider the core versus non-core characterization of each asserted claim. *Mirant Corp.,* 337 B.R. at 116; *Halper v. Halper,* 164 F.3d 830, 839 (3d Cir.1999).

---

**3.** Amway or its successor initially filed proofs of claim based on the arbitration judgment, but the claims were subsequently withdrawn.

Some Courts have categorized adversary proceedings as core or non-core despite a mix of core and non-core claims based on whether the core or non-core claims "predominate." *See In re Hughes–Bechtol Inc.*, 141 B.R. 946, 949 (Bankr.S.D.Ohio 1992); *In re Cinematronics Inc.*, 111 B.R. 892, 901 (Bankr.S.D.Cal.1990); *Sibarium v. NCNB Tex. Nat. Bank*, 107 B.R. 108, 115 (N.D.Tex.1989). The Third Circuit recognized this approach's inconsistency with the Supreme Court's *Marathon* decision. *Halper*, 164 F.3d at 839. Under the "predominate approach," a bankruptcy court could issue a final order resolving a non-core pure state law contract claim if the adversary proceeding was dominated by core matters, even though the bankruptcy court's resolution of the state law contract claim is precisely the exercise of authority that the *Marathon* court found inconsistent with Article III. This Court finds the *Halper* opinion persuasive and most consistent with *Marathon*. Accordingly, the Court rejects the "predominate approach."

Analyzing each claim individually, Plaintiffs' adversary proceeding may present a mix of core and non-core claims. Plaintiffs' damages claims are non-core claims for which this Court can only issue proposed findings of fact and conclusions of law. Any counterclaims asserted by the Amway Defendants would be core claims that this Court could resolve by final orders.

Though the complaint may present both core and non-core claims, the Court finds that the core versus non-core permissive withdrawal factor favors withdrawal. Core claims are hypothetical at this stage in the litigation. Even if the core claims are asserted, they will likely be claims for legal fees that will be ancillary to resolution of Plaintiffs' non-core claims.

The core versus non-core factor is an important factor within the permissive withdrawal analysis, but is not alone determinative.

### ii. Fostering the Economical Use of the Debtors' and Creditors' Resources

The Amway Defendants contend that the District Court can more efficiently resolve this adversary proceeding because the District Court is already familiar with the parties, facts, and legal issues. Plaintiffs correctly note that this adversary proceeding asserts claims that are distinct from the claims asserted in the District Court litigation. The District Court suit asserts contract claims based on the Amway Defendants' alleged failure to pay Plaintiffs all that they were owed. The claims pre-exist the arbitration and arise independently of the arbitration. The Bankruptcy Court adversary proceeding asserts, largely, fraud claims that arise from the arbitration process. The claims, facts, and damages pled in each suit, though related, are independent.

Nevertheless, the District Court does have familiarity with facts and issues presented by this adversary. The District Court has considered evidence and issued lengthy orders. Though the District Court may not have considered all facts alleged in this adversary, the District Court's Order denying Plaintiffs' motion to vacate considered facts related to Plaintiffs' knowledge of the Amway Defendants' selection and training of the arbitrator.

The District Court's familiarity is not significantly greater than this Court's awareness of the relevant facts and issues. This Court has become quite familiar with the adversary through the oral arguments made at the December 8, 2008 hearing and consideration of the Amway Defendants' motions to withdraw the reference and

motions to dismiss. The Court finds that the District Court has greater familiarity with certain facts and issues based on its experience with the related litigation, but not a significantly greater familiarity with the particular facts and issues presented by this adversary.

Though the District Court's greater familiarity may have a modest effect on the District Court's ability to more efficiently resolve the adversary than this Court, the Court gives little weight to the efficiency factor.

Any efficiencies would arise solely from the District Court's greater knowledge rather than an ability to consolidate this adversary proceeding with the lawsuit pending in the District Court. During the December 8 hearing, the Amway Defendants conceded that the two suits would have to be resolved in separate trials. The issues presented in this adversary are different from those presented to the District Court and the suits cannot be consolidated for a single trial without unduly prejudicing one side.

Since the trials would not be consolidated, there is no assurance that—if withdrawal were approved—the case would be assigned to District Court Judge Harmon. Motions to withdraw the reference are randomly assigned amongst the District Judges.[4] Even if the case were, by happenstance, randomly assigned to Judge Harmon, the District Court would have to resolve the bankruptcy adversary separately from the 1998 lawsuit. All parties would bear the expense of litigating two trials.

The Court finds that any efficiency stemming from the District Court's alleged greater familiarity with facts and issues is insignificant. Accordingly, the Court finds that the efficiency factor is neutral with respect to withdrawal.

### iii. Expediting the Bankruptcy Process

The Court finds that the expediting the bankruptcy process factor is neutral with respect to withdrawal of the reference. The Amway Defendants contend that Plaintiffs' bankruptcy cases are near closure and only the pending adversaries are preventing closure. The argument is without merit. Closure of a bankruptcy case is an administrative act without substantive consequence. Even if withdrawal hastened the closure date, the substantive aspects of Plaintiffs' bankruptcy cases would not be affected. If there are proceeds payable to Plaintiffs, those proceeds would become distributable assets from their bankruptcy cases.

Accordingly, withdrawal of the reference alone would not affect the bankruptcy case's closure. If Plaintiffs' claims are estate assets, withdrawal of the reference will not change that fact. The Amway Defendants' have not articulated how the claims would not constitute property of the estate. Section 541(a)(1) defines as property of the estate all legal or equitable interests of the debtor as of commencement of the case. 11 U.S.C. § 541(a)(1). A debtor's legal claims constitute property of the estate under § 541(a)(1). *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.),* 522 F.3d 575, 584 (5th Cir.2008) ("The phrase 'all legal or equitable interests of the debtor in property' has been construed broadly, and includes 'rights of action' such as claims based on state or federal law."). Plaintiffs' claims on the alleged fraudulent arbitration scheme and the Amway Defendants' attempts to enforce the arbitration

---

**4.** The District Court recently altered its prior policy regarding assignments of motions to withdraw the reference. All such motions are now randomly assigned by the clerk.

judgment all arose before the commencement of the various bankruptcy cases and constitute estate assets. The Amway Defendants offer no basis for concluding that any of Plaintiffs' claims arose subsequent to Plaintiffs bankruptcy filings or are otherwise excluded from § 541(a)'s definition of estate property.

The Court also notes that Plaintiffs' failure to list in their bankruptcy schedules claims asserted in this adversary does not affect the analysis. Generally, if a debtor fails to list a claim in the bankruptcy schedules, the debtor is judicially estopped from later asserting that claim for the debtor's own benefit. *Kane v. Caillouet,* 535 F.3d 380, 386 (5th Cir.2008); *Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.),* 374 F.3d 330, 334 (5th Cir.2004). However, the Fifth Circuit has held that judicial estoppel does not apply when the Trustee seeks to bring the claim on behalf of the estate. *Kane,* 535 F.3d at 387. In the latter case, the Trustee is bringing the claim to benefit innocent creditors, rather than the debtor bringing the claim to benefit the debtor at the creditors' expense. *Id.* In any event, the exclusion of the claims from the schedules is not dispositive of whether the Plaintiffs would be estopped. It is a fact intensive inquiry. *Id.* The Amway Defendants have not demonstrated or alleged that Plaintiffs would be estopped from asserting their claims or that, even if Plaintiffs were estopped, that the trustees of Plaintiffs' bankruptcy cases could not assert the claims. The Court has required Plaintiffs to file an amended complaint and Plaintiffs have suggested that the trustees of all the Plaintiffs' bankruptcy estates will be added to the complaint. On February 18, 2009, J. Craig Cowgill, Plaintiffs' co-counsel, filed an affidavit stating that the trustees of most estates have retained Plaintiffs' counsel as special counsel to represent the estates.

Moreover, this factor may actually favor retaining this adversary proceeding in the bankruptcy court. This Court has adequate time to conduct the trial and could resolve the dispute in a timely manner that would allow for the actual distribution of estate assets, if any.

#### iv. Reducing Forum Shopping and Confusion

The Amway Defendants contend that this adversary proceeding should have been filed in the District Court and that Plaintiffs instead filed the adversary in this Court solely to avoid the District Court judge who issued opinions unfavorable to Plaintiffs. The same forum shopping argument can be levied against the Amway Defendants. Just as Plaintiffs may have an incentive to avoid a court that previously issued an opinion that was unfavorable to them, the Amway Defendants have an incentive to seek that same Court. The Court finds that the Amway Defendants have not met their burden with respect to the forum shopping factor.

The Amway Defendants also allege that retention of the reference by this Court could lead to inconsistent judgments. The District Court's 2005 Order found that Plaintiffs had knowledge of facts relating to Amway's selection and training of the arbitrator. Plaintiffs' claims in the bankruptcy adversary may depend on a similar finding. To the extent that this Court did not make the same finding, this Court's order could be inconsistent with the District Court's 2005 Order.

However, the 2005 Order has been reversed. Any other prior order of the District Court not considered by the Fifth Circuit remains interlocutory. Any future orders issued by both courts would not contain any inconsistencies. As discussed earlier, the District Court and Bankruptcy

Court litigation revolve around different facts and issues. The District Court could find for the Plaintiffs in the District Court litigation and this Court could find for Amway Defendants in the bankruptcy litigation without inconsistent findings. The District Court is considering claims based on conduct that pre-existed the arbitration scheme. This Court is considering claims based on the arbitration scheme itself and damages arising from the arbitration scheme.

The Amway Defendants' supplemental briefing makes a final argument regarding inconsistent judgments. The Amway Defendants contend that both the District Court and this Court may have to issue rulings regarding the status of the Hamilton Group. The Hamilton Group consists of former Amway Distributors who seek to join the Morrison Group in the pending District Court litigation. Both groups are plaintiffs in the Bankruptcy Court litigation. Accordingly, the Amway Defendants contend that *if* the District Court allows the Hamilton Group to join the Morrison Group, and *if* the Amway Defendants seek to enforce the arbitration provision against the Hamilton Group, and *if* the Amway Defendants seek to enforce the arbitration provision against the Hamilton Group in this Court, and *if* the District Court and this Court make different findings regarding enforcement of the arbitration provision against the Hamilton Group, then inconsistent judgments would result.

The Court gives no weight to this argument. The argument is too speculative to warrant material consideration. Additionally, the Amway Defendants offer no explanation for why any Court would enforce against the Hamilton Group the same arbitration provision the Fifth Circuit found unenforceable with respect to the Morrison Group. The Fifth Circuit's holding was not based on any facts peculiar to the Morrison Group. The Fifth Circuit found the arbitration provision unenforceable based on the fact that it could be unilaterally amended by Amway and apply retroactively.

The comity and policy issues underlying the concern for inconsistent judgments simply are not applicable in this case.

### v. Whether Jury Demands have been Made

The Amway Defendants' initial motion to withdraw the reference also relied upon the jury demand factor. Subsequently, Plaintiffs have withdrawn their jury demand. Presently, no party has a live jury demand. The Court gives no weight to this factor.

### vi. Promoting Uniformity in Bankruptcy Administration

The parties did not address this factor. Nor does the Court see its relevance to the facts of this case. The Court gives no weight to this factor.

### Summary of Permissive Withdrawal Factors

The Court must consider whether the core versus non-core permissive withdrawal factor, alone, establishes "cause" for withdrawal. As noted above, the core-versus non-core factor favors withdrawal in that all currently asserted claims are non-core. Every other permissive withdrawal factor is neutral with respect to withdrawal.

The core versus non-core factor is not insignificant. Efficiencies can be created by withdrawing the reference of non-core proceedings. Efficiencies arise from the fact that two courts may have to evaluate the same facts if the reference is not withdrawn. This Court will have to hold a trial and issue a report and recommendation to the District Court. The District Court

would then have to review the record and accept or reject this Court's recommendation in a final order.

However, if Congress intended for all non-core matters to be heard by district courts, then it would have stripped bankruptcy courts of all jurisdiction over non-core matters. Congress explicitly authorized bankruptcy courts to resolve "related to" non-core matters. 28 U.S.C. §§ 157(a); 1334(b). This Court has "related to" jurisdiction over this adversary proceeding. The Fifth Circuit has defined "related to" jurisdiction as encompassing any matter that "could conceivably have any effect on the estate." *In re Wood*, 825 F.2d at 93. Plaintiffs' claims could conceivably affect Plaintiffs' bankruptcy estates. Plaintiffs' Second Amended Complaint adds the trustees of six of the plaintiffs' bankruptcy estates. If Plaintiffs' claims are successful, at least a portion of the recovery will go to at least some of Plaintiffs' bankruptcy estates. The fact that some Plaintiffs did not list this cause of action in their bankruptcy schedules will not preclude an effect on the estate. As explained earlier, a trustee can bring a non-scheduled claim for the benefit of estate creditors even if judicial estoppel would preclude the debtor from brining the claim on his own behalf. *Kane*, 535 F.3d at 387.

Plaintiffs' adversary proceeding involves claims that Congress intended bankruptcy courts to consider. *Vela*, 2007 WL 1564562 at *3 ("Bankruptcy courts exist primarily to hear either 'core bankruptcy proceedings' under 28 U.S.C. § 157(b)(1), or proceedings otherwise 'related to' ongoing bankruptcy proceeding under § 157(c)(1)."). Congress consciously chose to give bankruptcy courts authority to issue reports and recommendations over non-core matters that Article III precludes bankruptcy courts from resolving with final orders. Courts have declined to grant withdrawal of the reference solely because the claims presented are non-core. *F.D.I.C. v. Fernandez*, 1994 WL 704969 (E.D.La. Dec.14, 1994).

The only significant basis for withdrawal is the inefficiencies created by a report and recommendation scheme that Congress consciously chose. The minimal and theoretical efficiencies the Amway Defendants allege would be gained by withdrawal are insufficient to establish "cause" for withdrawal of a matter for which Congress vested authority in bankruptcy judges. Finding "cause" for withdrawal based solely on the inefficiency of having a bankruptcy judge issue a report and recommendation over a matter in which the District Court may review the record in toto would be inconsistent with Congressional intent. The Court finds that the Amway Defendants have not met their burden.

### Conclusion

For the reasons set forth above, the Court recommends denying the Amway Defendants' motions to withdraw the reference.

June 26, 2009.