**IN RE: ROYCE HOMES, LP, Debtor.**

**Rodney Tow, Trustee, Plaintiff**

**v.**

**Park Lake Communities, LP, Defendant**

**Case No. 09–32467**
**Adversary No. 17–03322**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Signed 11/02/2017

Erin E. Jones, Ostrom Morris PLLC, Christopher David Lindstrom, Cooper Scully P.C., Houston, TX, for Plaintiff.

Victoria A. Dessens, Michael J. Durrschmidt, Hirsch & Westheimer, P.C., Houston, TX, for Defendant.

**REPORT AND RECOMMENDATION TO THE UNITED STATES DISTRICT COURT RECOMMENDING AGAINST WITHDRAWAL OF THE REFERENCE**

**[This Order Relates to Adv. Doc. No. 23]**

Jeff Bohm, United States Bankruptcy Judge

## I. INTRODUCTION

On August 1, 2017, Rodney Tow, the Chapter 7 trustee in the main case (the "Trustee"), initiated this adversary proceeding by filing an original complaint (the "Complaint") against Park Lake Communities, LP ("Park Lake"). [Adv. Doc. No. 1]. The Complaint asserts only one claim: the Trustee has sued Park Lake under 11 U.S.C. § 542(b) [1] requesting that this Court order Park Lake to pay down a debt of $4.5 million that it owes to the estate by remitting the proceeds to be generated from a certain receivable that Park Lake holds from the Montgomery County Municipal Utility District # 15 (the "MUD Reimbursement"). The MUD Reimbursement totals approximately $735,000.00. [Adv. Doc. No. 53].

Park Lake requests that this Court recommend to the District Court that the reference of this adversary proceeding be withdrawn. [Adv. Doc. No. 23]. The Trustee vigorously opposes this request. [Adv. Doc. No. 33]. On October 18, 2017, this Court held a hearing on this dispute, admitted exhibits, listened to argument from counsel for both parties, and then took the matter under advisement. Pursuant to Bankruptcy Local Rule 5011–1, this Court now issues this Report and Recommenda-

---

1. Any reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, and any reference to

"the Code" refers to the United States Bankruptcy Code, unless otherwise noted.

tion to the District Court recommending against withdrawal of the reference.

## II. FACTUAL BACKGROUND [2]

1. On February 2, 2004, Park Lake, a developer of subdivisions in the greater Houston area, entered into a pre-construction agreement with the Montgomery County Municipal Utility District #15 ("MUD #15"). [Park Lake Ex. No. 4]. This agreement related to Park Lake's development of a subdivision referred to as Gleneagles; among other things, this agreement entitled Park Lake to the MUD Reimbursement under certain conditions. [*Id.*]. Under the terms of this agreement, it expired by no later than February 2, 2014. [*Id.*].

2. On April 7, 2009, four creditors of Royce Homes LP (the "Debtor") filed a Chapter 7 involuntary petition against the Debtor. [Main Case No. 09-32467, Doc. No. 1]. On April 30, 2009, this Court entered the order for relief. [Main Case No. 09-32467, Doc. No. 11]. The Debtor was a homebuilder and, according to the Trustee, was the single largest purchaser of lots from Park Lake. [Adv. Doc. No. 1, p. 6 ¶ 21]. The Debtor ceased operations in July of 2008, and Park Lake, which depended almost entirely upon the Debtor for its revenues, also ceased its operations in this same year. [*Id.* at pp. 3 ¶ 9, 7 ¶ 23].

3. On April 30, 2009, the Trustee received his appointment in the main case to serve as trustee for the Debtor's estate. [Main Case No. 09-32467, minute entry on Apr. 30, 2009].

4. On July 7, 2009, this Court entered an order designating John Speer ("Speer") as the representative of the Debtor for purposes of its Chapter 7 case. [Main Case No. 09-32467, Doc. Nos. 74 & 75].

5. On July 28, 2009, Speer, as the Debtor's authorized representative, signed and filed the Debtor's schedules, including Schedule B. [Main Case No. 09-32467, Doc. No. 92]. In this Schedule B, Speer represented that the Debtor's total assets (excluding real estate) had a value of $867,883.61. [*Id.* at pp. 3–6]. There was no disclosure of any indebtedness owed by Park Lake to the Debtor on this Schedule B. [*See id.*].

6. On August 28, 2009, Park Lake lost its charter pursuant to Section

---

**2.** The findings of fact that this Court sets forth herein are done solely for the purpose of making this Report and Recommendation to the District Court. The findings are based upon: (1) exhibits introduced at the hearing held on the motion to withdraw the reference; (2) factual allegations in pleadings that have been filed in this adversary proceeding that are not disputed; (3) this Court's review of the docket sheet in the Debtor's main Chapter 7 case, plus pleadings and orders that have been entered; (4) this Court's review of the suit before the District Court bearing civil action number 4:11-cv-03700, plus pleadings and orders that have been entered; and (5) testimony from the hearing held on October 12, 2017 in this Court on the Trustee's application for temporary injunction, *see, e.g., In re Acequia, Inc.,* 787 F.2d 1352, 1358–59 (9th Cir. 1986) (holding that a bankruptcy court is not precluded "from considering evidence presented by the parties at prior evidentiary hearings ... [and that] [t]o require the bankruptcy court to ignore prior evidence would impose a harsh and unnecessary administrative burden."); *Credit Alliance Corp. v. Idaho Asphalt Supply, Inc. (In re Blumer),* 95 B.R. 143, 146 (9th Cir. BAP 1988) (acknowledging that "a bankruptcy judge may, but need not, consider evidence from a prior hearing in the same case"). The Court reserves the right to change these findings after conducting a trial on the merits (if the District Court decides not to withdraw the reference).

171.309 of the Texas Tax Code. [Trustee Ex. No. 8].

7. On September 29, 2009, Speer, as the Debtor's authorized representative, signed and filed the Debtor's statement of financial affairs (the "SOFA"). [Main Case No. 09–32467, Doc. No. 125].

 a. Item number 13 on the SOFA required the Debtor to list all setoffs made by any creditor against a debt owed to the Debtor within ninety days preceding the commencement of the Debtor's Chapter 7 case. Speer checked the "none" box, thereby representing that no creditor of the Debtor had made any setoff against an obligation owed by that creditor to the Debtor. [*Id.* at p. 6 of 53].

 b. Item number 10 on the SOFA required the Debtor to list all property that the Debtor had transferred outside the ordinary course of its business, either absolutely or as security, within the two years immediately preceding the commencement of the Debtor's Chapter 7 case. [*Id.* at p. 5 of 53]. Speer attached several pages to the SOFA describing such transfers. However, Speer did not reference any transfer of the Debtor's interest in Park Lake that was made within the two years prior to the filing of the involuntary petition against the Debtor. [*Id.*].

8. On March 8, 2011, the Trustee took the 2004 examination of Speer in the main case. [Trustee Ex. No. 3]; [Park Lake Ex. No. 14]. During this examination, Speer admitted that Park Lake owed the Debtor the sum of $4,495,869.31, representing unpaid advances that the Debtor had extended to Park Lake (the "Debt") during the time that both entities were operational and doing business with one another. [Trustee Ex. Nos. 3 & 7]. According to the Trustee, the Debt is a matured, unsecured obligation that was still owed on the date of the filing of the involuntary petition against the Debtor, and the Debt should have been scheduled as an asset of the Debtor's estate on the Schedule B that Speer filed on July 28, 2009. [Tape Recording, Oct. 18, 2017 Hearing at 10:53:05–10:53:20 A.M.]. Speer, as the authorized representative of the Debtor, has never filed an amended Schedule B disclosing the existence of the Debt.

9. On April 28, 2011, the Trustee initiated an adversary proceeding in this Court against numerous defendants, including Park Lake and Speer (the "Fraudulent Conveyance Suit"). [Adv. Proc. No. 11–03191, Adv. Doc. No. 1].

10. On October 13, 2011, the undersigned judge issued a report and recommendation to the District Court recommending that it withdraw the reference of the Fraudulent Conveyance Suit. [Adv. Proc. No. 11–03191, Adv. Doc. No. 201].

11. On October 26, 2011, the District Court withdrew the reference of the Fraudulent Conveyance Suit. [Civ. Act. No. 4:11–cv–03700, Doc. No. 11].

12. After the District Court withdrew the reference of the Fraudulent Conveyance Suit, the Trustee amended his complaint, and in his third amended complaint filed on August 20, 2012, he added a claim against Park Lake to recover the Debt. [Civ. Act. No. 4:11–cv–03700,

Doc. No. 77, p. 183 of 606]. However, prior to trial of the Fraudulent Conveyance Suit, the Trustee dropped this particular claim out of the belief that Park Lake had no assets with which to pay the Debt, either in whole or in part. [Tape Recording, Oct. 12, 2017 Hearing at 2:13:04–2:14:05 P.M.].

13. The District Court held two jury trials on the claims brought by the Trustee in the Fraudulent Conveyance Suit, and on March 31, 2015, entered judgment against Speer in the amount of $12,129,006.90, plus court costs in the amount of $11,948.03. [Civ. Act. No. 4:11–cv–03700, Doc. No. 417].

14. After the District Court issued its judgment, the Trustee took post-judgment discovery by serving interrogatories upon Speer. Speer answered these interrogatories in May and July of 2015. One of these interrogatories required Speer to identify any ownership interest that he has in any entity. Speer disclosed that he had an interest in several entities, but he did not disclose that he had any interest in Park Lake. [Trustee Ex. Nos. 10 & 11]. Speer now takes the position that he does own an interest in Park Lake.

15. On August 18, 2015, all of the parties in the Fraudulent Conveyance Suit underwent mediation, and a settlement was reached. [Civ. Act. No. 4:11–cv–03700, Doc. No. 478, p. 3 ¶ 14].

16. On November 3, 2015, the District Court approved the compromise that the parties had negotiated in their mediation. [Civ. Act. No. 4:11–cv–03700, Doc. No. 480].

17. On January 28, 2016, as part of the documentation memorializing the compromise that the District Court had approved, the parties signed a "Full and Final Settlement Agreement and Release" (the "Release"). [Park Lake Ex. No. 1]; [Trustee Ex. No. 1]. In the Release, the Trustee released the Speer Group and its present and former ... *affiliates* ... from any and all legal equitable claims, demands, accounts, debts, liabilities, causes of action, and damages, whether known, unknown, suspected, unsuspected, or claimed, now existing or which might have arisen on or prior to the Effective Date, relating to the State Lawsuit, the Federal Lawsuit, or any other undertaking, act, omission, relationship, or agreement or proposed agreement with or between the Trustee and the Speer Group arising on or prior to the Effective Date, in each case without regard to whether such claim was, is, or could have been asserted in the State or Federal Lawsuits.[3]

[Park Lake Ex. No. 1, p. 13 of 24] (emphasis and footnote added); [Trustee Ex. No. 1, p. 13 of 24] (emphasis and footnote added).

18. On June 1, 2016, Speer, in his capacity as CEO of Park Lake, received a letter from Joe Fogarty (in his capacity as "president corporate general partner" of 26 Gleneagles

---

**3.** Section 9 of the Release defines the Speer Group to include "Speer in all capacities, Magueyitos Land & Minerals, L.P., Maguey-itos Management, LLC ... and Vestalia." [Park Lake Ex. No. 1, p. 11 of 24]; [Trustee Ex. No. 1, p. 11 of 24]. The Speer Group's definition does *not* expressly include Park Lake. However, Speer takes the position that Park Lake is an affiliate and was released of all and any claims that the Trustee has against Park Lake. The Trustee strongly disagrees.

Limited) setting forth that the MUD # 15 had decided to pursue a bond issue, which in turn would generate payment of the MUD Reimbursement to Park Lake. [Park Lake Ex. No. 6].

19. On August 10, 2016, the MUD # 15 and Park Lake executed a document entitled "First Addendum to Pre–Construction Agreement" (the "Addendum"). [Park Lake Ex. No. 5]. The Addendum amended the pre-construction agreement dated February 2, 2004 such that the agreement once again became effective, thus enabling Park Lake to receive the MUD Reimbursement. [*Id.*].

20. On October 31, 2016, Park Lake applied for reinstatement of its charter. [Trustee Ex. No. 8]. Speer signed the application for reinstatement on behalf of Hammersmith Group Inc., which is the general partner of Park Lake. [*Id.*].

21. On May 16, 2017, the Trustee requested information from the MUD # 15 about any reimbursements that the MUD # 15 proposes to pay to Park Lake. [Trustee Ex. No. 4]. He received an engineering report written for the MUD # 15 indicating that a bond issue would be going forward, which in turn would lead to the distribution of the MUD Reimbursement to Park Lake. [*Id.*].

22. On August 1, 2017, the Trustee initiated the adversary proceeding presently pending before this Court by suing Park Lake under § 542(b) and requesting that this Court order Park Lake to pay down the Debt by using the proceeds from the MUD Reimbursement (the "Turnover Suit"). [Adv. Doc. No. 1].

23. On the same day, in the Turnover Suit, the Trustee filed an emergency application for a temporary restraining order and an application for preliminary and permanent injunction. [Adv. Doc. No. 3]. The Trustee sought to enjoin Park Lake from receiving the MUD Reimbursement and, instead, to have the reimbursement proceeds paid directly to the Trustee to be held in his account pending the outcome of the Turnover Suit. [*Id.* at p. 14 of 15].

24. On August 4, 2017, this Court held a hearing on the Trustee's emergency application for a temporary restraining order. Counsel for the Trustee and Park Lake announced the terms of an agreement for a temporary restraining order, and then this Court entered an order memorializing these terms on this same day. [Adv. Doc. No. 12].

25. On September 5, 2017, in the Fraudulent Conveyance Suit, Speer filed a motion requesting the District Court to declare the Trustee in contempt for initiating the Turnover Suit. [Civ. Act. No. 4:11–cv–03700, Doc. No. 485]. According to Speer, the Release released all claims that the Trustee has against Park Lake, and therefore, the Turnover Suit was a breach of the Release and a violation of the District Court's order of November 3, 2015 approving the compromise. [*See* Finding of Fact Nos. 16 & 17].

26. Further, on September 5, 2017, Park Lake filed a motion to dismiss the Turnover Suit. [Adv. Doc. No. 19].

27. Additionally, on September 5, 2017, Park Lake filed a jury demand in the Turnover Suit. [Adv. Doc. No.

20]. In this pleading, Park Lake expressly set forth that it does not consent to a trial of the Turnover Suit in this Court. [*Id.* at p. 2 of 5].

28. Finally, on September 5, 2017, Park Lake filed a motion to withdraw reference of the Turnover Suit. [Adv. Doc. No. 21]. Two days later, Park Lake filed an amended motion to withdraw reference of the Turnover Suit. [Adv. Doc. No. 23].

29. On September 20, 2017, this Court held a status conference in the Turnover Suit. At this status conference, the parties reported that in the Fraudulent Conveyance Suit, the District Court, at a hearing held earlier in the day, had denied Speer's motion to declare the Trustee in civil contempt for filing the Turnover Suit. Based upon this information and statements of counsel, the Court scheduled hearings on Park Lake's motion to dismiss, the Trustee's application for a temporary injunction, and Park Lake's amended motion to withdraw the reference. The Court also imposed deadlines for the parties to file responses to these pending motions.

30. On October 3, 2017, the District Court entered the order denying Speer's motion to declare the Trustee in contempt. [Civ. Act. No. 4:11–cv–03700, Doc. No. 492]; [*see* Finding of Fact No. 25].

31. On October 6, 2017, this Court held a hearing on Park Lake's motion to dismiss, which lasted over two and a half hours. The Court took the matter under advisement.

32. On October 11, 2017, this Court held a hearing to make findings of fact and conclusions of law on the record explaining why it had decided to deny the motion to dismiss. Subsequently, on the same day, this Court entered an order denying Park Lake's motion to dismiss. [Adv. Doc. No. 44].

33. On October 12, 2017, this Court held a hearing on the Trustee's application for a temporary injunction. Testimony was adduced; exhibits were admitted; closing arguments were made; and the Court took the matter under advisement. The hearing lasted over five hours.

34. On October 18, 2017, this Court held a hearing on the amended motion to withdraw reference. Exhibits were admitted; oral arguments were delivered; and this Court took the matter under advisement. The hearing lasted approximately two and a half hours.

35. On November 2, 2017, this Court held a hearing to make findings of fact and conclusions of law on the record explaining why it had decided to deny the Trustee's application for a temporary injunction. Additionally, at this hearing, the Court announced that it would be submitting this Report and Recommendation to the District Court recommending against withdrawal of the reference of the Turnover Suit. On this same day, this Court entered an order denying the Trustee's application for a temporary injunction, [Adv. Doc. No. 55], and also entered this Report and Recommendation.

## III. Conclusions of Law

### A. Mandatory Withdrawal of the Reference

Pursuant to 28 U.S.C. § 157(a) and General Order 2012–6 of the United

States District Court for the Southern District of Texas, "[bankruptcy] cases and proceedings arising under Title 11 or arising in or related to a case under Title 11 of the United States Code are automatically referred to the bankruptcy judges of this district." 28 U.S.C. § 157(d) then provides for both mandatory and permissive withdrawal of the reference by district courts. *See* 28 U.S.C. § 157(d). Withdrawal of the reference is mandatory "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *Id.* This provision "is to be construed narrowly, so that it does not become an 'escape hatch' for matters properly before the bankruptcy court." *United States v. Johns–Manville Corp.*, 63 B.R. 600, 603 (S.D.N.Y. 1986); *see also Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 202 (S.D. Tex. 2008). The district court must withdraw the reference when a "substantial consideration of non-Bankruptcy Code federal law" is required. *Levine*, 400 B.R. at 203; *Lifemark Hosps. of Louisiana, Inc. v. Liljeberg Enters., Inc.*, 161 B.R. 21, 24 (E.D. La. 1993); *In re Nat. Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992).

█ In the Turnover Suit at bar, there are no causes of action involving federal law outside of the Code. Rather, the Trustee is bringing only one claim, and it is based upon an express provision of the Code: namely, § 542(b). Accordingly, mandatory withdrawal is inapplicable in relation to the Turnover Suit. This Court will now address permissive withdrawal of the reference.

## B. Permissive Withdrawal of the Reference

"The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Here, there is no question that Park Lake has timely filed its motion to withdraw the reference: it filed this motion only thirty-five days after the Trustee initiated the Turnover Suit, and then amended its motion only two days later. [Finding of Fact No. 28]. Thus, the sole question is whether sufficient cause exists for the District Court to withdraw the reference.

█ The party seeking withdrawal of the reference bears the burden of establishing cause under § 157(d). *In re Morrison*, 409 B.R. 384, 389 (S.D. Tex. 2009). Further, "[c]ause for withdrawal can exist only if premised upon a sound articulated foundation." *Id.* (internal quotation marks and citations omitted). In determining whether "cause" exists for permissive withdrawal of the reference, the Fifth Circuit has held that a district court should consider whether: (1) the underlying lawsuit is a non-core proceeding; (2) uniformity in bankruptcy administration will be promoted; (3) forum shopping and confusion will be reduced; (4) economical use of debtors' and creditors' resources will be fostered; (5) the bankruptcy process will be expedited; and (6) a party has demanded a jury trial. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985). Here, a review of these factors disfavors withdrawal of the reference of the Turnover Suit by the District Court.

### 1. The first factor: the underlying lawsuit is a core proceeding

█ The Trustee seeks relief solely under § 542, a provision of the Code which is entitled "Turnover of property to the estate." 28 U.S.C. § 157(b)(2)(E) expressly sets forth that "[c]ore proceedings include . . . (E) orders to turn over property of the estate." Because the Trustee's claim under

§ 542(b) is expressly deemed to be a core proceeding under 28 U.S.C. § 157(b)(2)(E), this factor—at first blush—weighs against withdrawal of the reference.

Park Lake, however, argues that the relief sought by the Trustee in the Turnover Suit is nothing more than a disguised "garden variety" collection action that is based on state law—and therefore the dispute at bar is a non-core proceeding that favors withdrawal of the reference. [Adv. Doc. No. 23, p. 10 ¶ 27]. Indeed, there is a line of cases holding that an action by a trustee to recover an account receivable based upon state law contract principles does not fall within the scope of turnover actions contemplated by § 542(b) and 28 U.S.C. § 157(b)(2)(E), and therefore such an action is a non-core proceeding. *See, e.g., In re Satelco,* 58 B.R. 781, 789 (Bankr. N.D. Tex. 1986); *Matter of Century Brass Prod., Inc.,* 58 B.R. 838, 843 (Bankr. D. Conn. 1986).

However, other courts have held to the contrary. *See, e.g., In re Nat. Equip. & Mold Corp.,* 64 B.R. 239, 244 (Bankr. N.D. Ohio 1986) ("Since an action for turnover is specifically enumerated as a core proceeding, and since the question of state law does not, in and of itself, render an action non-core, it must be concluded that the Trustee's first cause of action is a core proceeding.") (internal citations omitted). This Court is persuaded by this line of authority. The Second Circuit's textual reasoning is compelling:

> Although "actions on account and debt and contract generally arise under state law," § 542(b) "sufficient[ly] ... arrogate[s] the general law concepts and transform[s] them into bankruptcy law," "The mere fact that" Connecticut denies that it owes the matured debt for Willington's services because of a recoupment right

"does not take the trustee's action outside the scope of section 542(b)" *In re Willington Convalescent Home, Inc.,* 850 F.2d 50, 52 n.2 (2d Cir. 1988) (internal citation omitted and emphasis added), *aff'd sub nom. Hoffman v. Connecticut Dep't of Income Maint.,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989); 4 Norton Bankr. L. & Prac. 3d § 62:6 (3d ed. 2017) ("Code § 542(b) establishes a cause of action for payment of a debt to the estate as a matter of statutory bankruptcy law, rather than as a matter of state law, which ordinarily would be the source of law for a cause of action on a debt.") (footnote omitted).

Thus, this Court rejects Park Lake's contention that the Trustee's claim under § 542(b) is a non-core proceeding simply because suits to collect debts involve state law. The Debt is property of the estate, and the Trustee's attempt to obtain an order requiring Park Lake to pay the Debtor by remitting the MUD Reimbursement proceeds to the Trustee—even if arguments based upon state law come into play—does not turn the dispute into a non-core action.

■■■ This conclusion, however, does not end the analysis of *Holland America's* first factor. In *In re Morrison,* the Honorable Marvin Isgur stated that: "Section 157(b)(2)(E) encompasses 'orders to turnover property of the estate.' Section 157(b)(2)(E) only applies to claims for turnover of property *owned* by the debtor rather than claims for amounts *owed* to the debtor." 409 B.R. at 390. The undersigned judge respectfully disagrees with Judge Isgur. This Court is required to interpret a statute under the "plain meaning" rule. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240–42, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Here, the statute—i.e., 28 U.S.C. § 157(b)(2)(E)—expressly sets forth that, in relevant part,

"core proceedings include ... orders to turn over property of the estate." This provision does not set forth that "core proceedings include orders to turn over property only owned by the estate, but not owed to the estate." Indeed, § 542 is entitled "Turnover of property to the estate", and it contains two subsections that involve turnover of estate property. Section 542(a) involves turnover (i.e., recovery) of tangible property of the estate, and § 542(b) involves turnover (i.e., recovery) of one type of intangible property of the estate—namely, a debt owed to the estate such as an account receivable or a note receivable.[4] Here, the Debt is property of the Debtor's Chapter 7 estate, and the Trustee is attempting to recover the Debt by prosecuting the Turnover Suit pursuant to § 542(b). For these reasons, this Court finds that the Trustee's § 542(b) claim in the Turnover Suit falls within the category of core proceedings delineated by 28 U.S.C. § 157(b)(2)(E).

 There is one final point. The Fifth Circuit articulated the *Holland America* factors in 1985, which was well before the Supreme Court issued its watershed opinion in *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). In *Stern*, the Supreme Court made clear that certain claims labeled as "core" in 28 U.S.C. § 157(b)(2) may nevertheless not be finally adjudicated by a bankruptcy court. *Id.* at 503, 131 S.Ct. 2594. In *Stern*, the claim at issue was a counterclaim by the debtor based solely on state law for tortious interference against a creditor of the estate—a claim that fit within the express definition of "core proceeding" under 28 U.S.C. § 157(b)(2)(C). *Id.* at 475, 131 S.Ct. 2594. The Supreme Court held that even though the claim would augment the bankruptcy estate, it did not create a sufficient

nexus to the resolution of the bankruptcy proceeding. *Id.* at 499, 131 S.Ct. 2594. Specifically, the Supreme Court stated that: "[The debtor's] claim is ... in no way derived from or dependent upon bankruptcy law; it is a state tort action that exists without regard to any bankruptcy proceeding." *Id.* Thus, the Supreme Court held that the bankruptcy court could not enter a final judgment, but rather was required to submit proposed findings and conclusions to the district court. *Exec. Benefits Ins. Agency v. Arkison*, —— U.S. ——, 134 S.Ct. 2165, 2172–73, 189 L.Ed.2d 83 (2014).

In this Court's view, *Stern* should be part of the analysis as to whether the first *Holland America* factor favors or disfavors withdrawal of the reference. Here, the Trustee's § 542(b) claim against Park Lake is explicitly delineated as a core proceeding under 28 U.S.C. § 157(b)(2)(E). But, the analysis should go further, and this Court should inquire whether the Trustee's claim is a *Stern* claim because, if it is, then, as a practical matter, this Court cannot enter a final order just as it cannot enter a final order in any non-core proceeding (unless all parties consent, and Park Lake does not do so here). Stated differently, if the Trustee's § 542(b) claim is a *Stern* claim, the first factor set forth in *Holland America* would favor withdrawal of the reference.

 In the dispute at bar, the Trustee, who stands in shoes similar to those of the debtor in *Stern*, has brought a claim against Park Lake under a very specific provision of the Code. [Finding of Fact No. 22]. This is a key distinguishing fact from *Stern*, as the debtor's claim there was based solely on state law. Here, the Trustee, pursuant to § 542(b), must satisfy the elements of this particular provision to

---

4. The Texas Property Tax Code, for example, defines "intangible personal property" to in- clude a "note or account receivable ...." Tex. Tax Code Ann. § 1.04(6) (west).

prevail. For example, § 542(b) requires that a plaintiff (here, the Trustee) prove that the debt owed by the defendant (here, Park Lake) is "mature, payable on demand, or payable on order." 5–542 Collier on Bankruptcy ¶ 542.04 (16th ed. 2011); *see, e.g., In re Allegheny, Inc.,* 68 B.R. 183, 190 (Bankr. W.D. Pa. 1986) ("It is clear then, that the collection on an accounts receivable claim can properly be a turnover action if said claim constitutes a matured debt."). Moreover, the Trustee's claim, if successful, will definitely increase the pool of funds that the Trustee, pursuant to his duties under § 704, can use to pay allowed claims pursuant to § 726. Under these circumstances, there is a sufficient nexus between the Trustee's claim and the resolution of the main Chapter 7 case—i.e., the payment of all allowed claims as expeditiously as possible. Stated differently, the Trustee's claim against Park Lake—in contrast to the debtor's claim in *Stern*—is expressly derived from the Code and is asserted to fulfill a quintessential duty of a Chapter 7 trustee: namely, to liquidate all assets of the estate in order to maximize distribution to creditors holding allowed claims against the estate.

In sum, the Trustee's claim is an expressed core proceeding that is **not** a *Stern* claim, which means that this Court has the constitutional authority to enter a final order in the Turnover Suit—unless Park Lake is entitled to a jury trial (which, as discussed subsequently, it is not). Under these circumstances, this first factor disfavors withdrawal of the reference.

2. The second factor: uniformity in bankruptcy administration will be promoted

■ If a bankruptcy court is already familiar with the facts of the underlying action, then allowing that court to adjudicate the proceeding will promote uniformity in the bankruptcy administration. *See In re Hargis,* 146 B.R. 173, 176 (N.D. Tex. 1992); *In re Kenai Corp.,* 136 B.R. 59, 61 (S.D.N.Y. 1992) ("Given [the bankruptcy's judge's] familiarity with the bankruptcy case involving [the debtor], [the bankruptcy judge] is in the best position to monitor all the proceedings related to that bankruptcy, including this adversary proceeding.").

In considering this factor, the Court will refer to two of its previous reports and recommendations on the withdrawal of reference. Each reached a different conclusion under this factor. *In re EbaseOne Corp.,* No. 01-31527-H4-7, 2006 WL 2405732, at *4 (Bankr. S.D. Tex. June 14, 2006); *In re Doctors Hosp. 1997, L.P.,* 351 B.R. 813, 867–68 (Bankr. S.D. Tex. 2006). In *EbaseOne,* this Court noted that none of the substantive issues in the adversary proceeding had been reached because the motion to withdraw reference was filed shortly after the complaint. 2006 WL 2405732, at *4. The Court concluded that it had not obtained a significant level of familiarity with the dispute and therefore the factor favored withdrawal. *Id.* Conversely, in *Doctors Hospital,* this Court had already held several lengthy hearings on an application for preliminary injunction and several motions for summary judgment. 351 B.R. at 867–68. The Court, therefore, determined that it had reached such a level of familiarity with the factual disputes and legal issues involved in the underlying adversary proceeding that it would be disruptive to the uniformity of bankruptcy administration for the suit to be withdrawn. *Id.*

Of these two polar examples, the procedural and factual background of the pending Turnover Suit is much closer to *Doctors Hospital.* This Court has already spent substantial time reviewing pleadings

and conducting research, and has already held six hearings in the Turnover Suit. First, on August 4, 2017, this Court held a hearing on the emergency application filed by the Trustee for a temporary restraining order seeking to prevent the MUD #15 from disbursing the MUD Reimbursement to Park Lake. [Finding of Fact No. 24]. Counsel for the parties recited the terms of an agreed temporary restraining order into the record, and this Court subsequently signed an order memorializing this agreement. [*Id.*]. Subsequently, on September 20, 2017, counsel for the parties appeared in court at a status conference, and the Court scheduled a hearing on the Trustee's application for a temporary injunction for October 12, 2017. [Finding of Fact No. 29].

Prior to the temporary injunction hearing, however, this Court held a hearing that lasted over two and a half hours on Park Lake's motion to dismiss. [Finding of Fact No. 31]. During this hearing, the Court became very familiar with the Trustee's allegations that Speer deliberately failed to disclose to the Trustee the pre-construction agreement and amendment thereto, as well as the MUD Reimbursement that the MUD #15 will pay pursuant to the amended agreement. [*See* Finding of Fact Nos. 1 & 19]. The Court also became very familiar with Park Lake's allegations that Speer did disclose the MUD Reimbursement at a 2004 examination taken on March 8, 2011. [*See* Finding of Fact No. 8]. The Court also became well-acquainted with the legal arguments made by both parties. For example, the Trustee contends that Speer, when he signed and filed the Debtor's schedules, deliberately failed to disclose that Park Lake owes the Debt to the estate because Speer knew that Park Lake would someday receive the MUD Reimbursement and wanted these funds for himself. [*See* Finding of Fact Nos. 4, 5, & 8]. For its part,

Park Lake contends that it is an affiliate of Speer or the Speer Group, and that therefore the Trustee released all claims that the estate had against Park Lake when the Trustee executed the release in January of 2016. [*See* Finding of Fact No. 17]. Park Lake also contends that even if the Trustee did not release all claims against Park Lake, the Trustee is barred from recovery due to the applicable statute of limitations, or, alternatively, to the doctrine of laches. [Adv. Doc. No. 23, p. 5 ¶ 11]. Park Lake points out that the Trustee has been aware of the Debt since March 8, 2011—when he took the 2004 examination of Speer, and Speer admitted the existence of the Debt, [Finding of Fact No. 8]—and emphasizes that in the third amended complaint that the Trustee filed in the Fraudulent Conveyance Suit on August 20, 2012, he actually added a claim against Park Lake to recover the Debt—but then withdrew this claim prior to the trials held in 2015, [Finding of Fact No. 12]. Thus, by the time that the Trustee filed the Turnover Suit on August 1, 2017, he had known about the Debt for more than six years; and, according to Park Lake, enough time had passed to bar the Trustee from prosecuting his § 542(b) claim as a matter of law—due either to the applicable four-year statute of limitations or, alternatively, to the doctrine of laches.

On October 11, 2017, this Court held another hearing to orally announce its decision to deny Park Lake's motion to dismiss. [Finding of Fact No. 32]. Then, the next day, this Court held a multi-hour hearing on the Trustee's application for temporary injunction, during which time the Court heard testimony from the Trustee and admitted numerous exhibits. [Finding of Fact No. 33]. After the Trustee rested in his case-in-chief, the Court heard argument from Park Lake's counsel that it should direct the verdict in its favor on the

grounds that the Trustee had failed to satisfy the elements of a temporary injunction. The Court denied this oral motion, and Park Lake thereafter put on its case-in-chief, calling Speer as a witness. The Court then heard closing arguments from counsel. By the conclusion of this hearing, the Court had become extremely familiar with all of the allegations and legal arguments, some of which are quite nuanced, of the parties.

Finally, on October 18, 2017, this Court held a hearing on Park Lake's amended motion to withdraw reference, [Finding of Fact No. 34], during which time the parties made arguments that led this Court to become even more familiar with all of the allegations and arguments of each of the parties. This hearing lasted approximately two and a half hours. [*Id.*]. Thus, by the conclusion of this hearing, this Court had spent approximately ten hours holding hearings and over twenty-five hours reviewing the parties' briefs and conducting its own research. [*See* Finding of Fact Nos. 31, 33, & 34]. This Court is therefore extremely familiar with all of the allegations associated with the Turnover Suit, as well as the applicable law, thereby putting this Court in the best position to quickly and efficiently adjudicate this proceeding—a dispute which directly involves property of the estate (i.e., the Debt) and the Trustee's liquidation of the Debt (through receiving payment of the proceeds from the MUD Reimbursement) so that claims can be paid in the main Chapter 7 case. Under these circumstances, this Court's adjudication of the Turnover Suit will promote uniformity in bankruptcy administration. This second factor therefore disfavors withdrawal of the reference.

### 3. The third factor: forum shopping and confusion will be reduced

 United States District Judge Kenneth M. Hoyt has stated: "In some sense, any party who objects to Bankruptcy Court adjudication is forum shopping." *Veldekens v. GE HFS Holdings, Inc.*, 362 B.R. 762, 769 (S.D. Tex. 2007). "A good faith claim of right, even when motivated (at least in part) by a desire for a more favorable decision maker, should not on that basis alone be denied as forum shopping." *Id.* (declining to find improper forum-shopping by party requesting withdrawal even though that party had previously agreed to adjudication by the bankruptcy court, as circumstances had changed since prior consent had been given). Here, even if Park Lake believes that the District Court will be more disposed to render a favorable decision on its behalf than this Court, there is nothing in the record indicating that Park Lake has engaged in improper forum shopping. Indeed, Park Lake did not delay the filing of its motion to withdraw the reference, but rather filed it thirty-five days after the Trustee initiated this suit, a date which was well before the date of the hearings on Park Lake's motion to dismiss and the Trustee's application for a temporary injunction. [*See* Finding of Fact Nos. 28, 31, & 33]. Thus, Park Lake did not deliberately "lay behind the log" to determine how this Court would rule before filing its motion to withdraw the reference.

Moreover, and perhaps more importantly, the District Court has familiarity with the dispute over the MUD Reimbursement because on September 5, 2017, Speer filed a motion in the Fraudulent Conveyance Suit asking the District Court to declare the Trustee in contempt for initiating the Turnover Suit on the grounds that the Trustee had released all claims against Park Lake pursuant to the terms of the Release. [Finding of Fact No. 25]. Speer's filing of this motion led the District Court to hold a hearing on September 20, 2017

and deny Speer's request to hold the Trustee in contempt. [Finding of Fact Nos. 29 & 30]; [Civ. Act. No. 4:11–cv–03700, Doc. Nos. 485 & 492]. Given that the District Court itself approved the settlement between the Trustee and Speer in 2015, and is also familiar with the dispute over the MUD Reimbursement from the record that the parties made at the September 20, 2017 hearing, this Court believes that Park Lake's seeking withdrawal of the reference is a reasonable request that does not smack of bad faith forum shopping.

Under the circumstances described above, this third factor favors withdrawal of the reference.

### 4. The fourth factor: economical use of debtor's and creditors' resources will be fostered

When dealing with a proceeding involving a bankruptcy estate and its creditors, the efficient use of the debtor's and creditors' resources in efforts to administer the debtor's estate and to resolve any related litigation is of significant importance. *In re Conseco Fin. Corp.*, 324 B.R. 50, 55 (N.D. Ill. 2005) (citing *Holland Am.*, 777 F.2d at 999). When a trustee administering the bankruptcy estate needs to bring quick resolution to the matters at bar, and the bankruptcy court is familiar with the parties, the factual background, and the legal issues involved, the goals of judicial efficiency and economical use of the estate's resources are best met by allowing the suit to remain in the bankruptcy court. Here, the main case was an involuntary bankruptcy case initiated by creditors who were frustrated by the Debtor's lack of payment over a long period of time prior to their filing the involuntary petition. [*See* Finding of Fact No. 2]. Further, the Debtor's Chapter 7 case has been pending since 2009. [*See id.*]. Under these circumstances, a speedy and economical resolution of this

main case is in the best interests of the estate and the creditors. And, such an expedited resolution can be best achieved if this Court adjudicates the Turnover Suit—which it can do within forty-five days, [*see* discussion in the next subsection discussing the fifth factor of *Holland America* ].

Moreover, some of the issues in the Turnover Suit involve actions taken, or omissions made, in this Court during the Debtor's main Chapter 7 case. For example, the Trustee asserts that Speer deliberately failed to disclose the Debt as an asset of the estate on Schedule B. Speer disputes that he completely failed to disclose the Debtor, as he contends the Trustee became aware of this asset through Speer's testimony at his 2004 examination. [*See* Finding of Fact No. 8]. As another example, Park Lake alleges that this Court's orders from the Chapter 11 case of *Decker Oaks Development II, Ltd.* ("*Decker Oaks*") resulted in Park Lake's property being used as security to allow the Debtor to appeal one of this Court's orders, [*Decker Oaks*, Adv. Proc. No. 07–03421, Adv. Doc. No. 63]—and that the eventual conveyance of Park Lake's property completely offset the Debt owed to the estate by Park Lake, [*Decker Oaks*, Adv. Proc. No. 07–03421, Adv. Doc. No. 77]. The Trustee vigorously disputes this argument by pointing out that Speer, when he signed and filed the SOFA, failed to disclose the offsets and transfers of property that Speer (on behalf of Park Lake) now cites to support his offset arguments. [*See* Finding of Fact No. 7]. The undersigned bankruptcy judge is more familiar than the District Court with the filings and activities that have taken place in the Debtor's main Chapter 7 case and the *Decker Oaks* case, and in its own courtroom; thus, judicial efficiency and economy would be best served if the undersigned judge presided over the trial of the Turnover Suit.

Given all of the circumstances described above, this fourth factor disfavors withdrawal of the reference.

5. **The fifth factor: the bankruptcy process will be expedited**

██ A district court should consider the importance of the proceeding to the bankruptcy case and refuse to withdraw the reference if the withdrawal would unduly delay the administration of the bankruptcy case. *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990). Here, a withdrawal of the reference might delay the administration of the main Chapter 7 case, depending upon whether the District Court's docket can accommodate a trial on the merits in the very near future. If the District Court does not withdraw the reference, the undersigned judge anticipates holding a trial on the merits within forty-five days, as there is not much—if any—discovery that really needs to be done. Indeed, as a practical matter, the parties have already had substantial discovery by virtue of their participation at the five-hour hearing on the Trustee's application for a temporary injunction, and it is not as if they need to now depose a plethora of third-party witnesses or obtain production of voluminous documents. A resolution of this dispute will definitely expedite the bankruptcy process in this particular Chapter 7 case because the Debt is one of the last assets that the Trustee needs to liquidate so as to generate proceeds to pay claims. Indeed, given the record made at the temporary injunction hearing, the only chance that the Trustee appears to have to liquidate the Debt—and it will only be a liquidation in part—is to obtain an order requiring Park Lake to pay the down the Debt by remitting the MUD Reimbursement proceeds to the estate. If the Trustee does not prevail at the trial on the merits, then it is highly doubtful that he will ever collect a dime of the Debt. Keeping in mind that the main Chapter 7 case has been in existence for over eight years, and that one of the duties of the Trustee is to "close such estate as expeditiously as is compatible with the best interests of parties in interest," § 704(a)(1), an expedited trial is appropriate for the Turnover Suit, and the undersigned judge's docket can easily accommodate such a trial. Finally, if the Trustee is successful at trial and recovers the MUD Reimbursement, he could seek this Court's approval to make another interim distribution of funds to creditors holding allowed claims should he conclude that the main case cannot soon be closed due to the need for more time to liquidate the few remaining assets of the estate.

Under the above-described circumstances, this fifth factor weighs against withdrawal of the reference.

6. **The sixth factor: a party has demanded a jury trial**

██ Whether a party is entitled to a jury trial is an extremely important factor. *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) ("As to the latter, in *In re Clay* the Fifth Circuit held that there must be a withdrawal of the reference as to claims to which the right to trial by jury attach."). Park Lake has demanded a jury trial, and insists that it is entitled to a jury trial on the grounds that it has never filed a proof of claim and that the Trustee seeks a legal remedy by requesting a judgment to obtain payment of the Debt. [Adv. Doc. No. 23, pp. 7–8 ¶¶ 15–18]. Essentially, Park Lake adopts the legal principle succinctly articulated by one bankruptcy court:

> A party against whom legal action has been brought to recover monetary damages and who has never filed a claim against the estate is entitled to a jury trial under the constitutional mandates of the Seventh Amendment

to the United States Constitution, notwithstanding Congress' characterization of the action as a core proceeding. *In re Nu Van Tech., Inc.*, No. 01-49589, 2003 WL 23785355, at *2 (Bankr. N.D. Tex. Oct. 14, 2003) (unreported opinion) (recommending withdrawal of the reference for claims based entirely upon state law, including breach of good faith, fair dealing, and fiduciary duty).

 This Court agrees with Park Lake that it has not filed a proof of claim in the Debtor's main Chapter 7 case. However, this Court disagrees with Park Lake that the Trustee's § 542(b) claim is a legal action to recover monetary damages. Rather, this Court agrees with the First Circuit's holding that "[a] turnover action is not an action to recover damages for the taking of estate property but an action to recover possession of property belonging to the estate at the time of the filing. *It invokes the court's most basic equitable powers to gather and manage property of the estate.*" *Braunstein v. McCabe*, 571 F.3d 108, 122 (1st Cir. 2009) (emphasis added) (citation omitted). And, this Court also agrees with the First Circuit's holding as to whether a party is entitled to a jury trial when sued in equity under § 542:

> Finally, our conclusion that there is no jury trial right in a turnover action under § 542 is supported by analogy to court decisions under § 549 of the Bankruptcy Code, under which a trustee may avoid certain post-petition transfers. Courts have held that § 549 actions are equitable rather than legal and do not include a jury trial right.

*Id.* at 123.

Other courts agree with the First Circuit's conclusion. *See, e.g., In re M & L Bus. Mach. Co., Inc.*, 59 F.3d 1078, 1082 (10th Cir. 1995) ("There is no underlying legal claim in this case ... We thus agree with the Colorado District Court in its

ruling prior to trial to the Bankruptcy Court that there is no right to trial by jury in a trustee's Section 549 claim for recovery of a post-petition transfer.") (citation omitted); *In re Gonzalez*, No. 02-05485 BKT, 2010 WL 3395677, at *1-2 (Bankr. D.P.R. Aug. 23, 2010) (holding that recovery of property of the estate is "equitable in nature" and "parties litigating equitable claims are not entitled to jury trials"); *In re Warmus*, 252 B.R. 584, 586 (Bankr. S.D. Fla. 2000) ("... Defendants are not entitled to a jury trial on any claim set forth in the underlying Complaint ... pursuant to 11 U.S.C. §§ 542 and 550.").

Under these circumstances, the sixth factor disfavors withdrawal of the reference.

**IV. BASED UPON THE ANALYSIS OF THE *HOLLAND AMERICA* FACTORS, THIS COURT RECOMMENDS AGAINST WITHDRAWAL OF THE REFERENCE**

In sum, the undersigned judge believes that five of the six *Holland America* factors disfavor withdrawal of the reference by the District Court. While no one factor is determinative, *Morrison*, 409 B.R. at 392, there is no question that the sixth factor is the most important and here, the sixth factor weighs against withdrawal of the reference. Because there are four other factors also weighing against withdrawal, this Court believes that Park Lake has failed to meet its burden of showing that cause exists under 28 U.S.C. § 157(d) for the reference of the Turnover Suit to be withdrawn. Accordingly, the undersigned judge recommends against withdrawal of the reference.

**V. ALTERNATIVE RECOMMENDATION**

If the District Court disagrees with the undersigned judge's analysis and concludes that cause exists to withdraw the reference, then this Court could maintain the reference until trial is ready to pro-

ceed. There is certainly precedent for this approach. *See Levine*, 400 B.R. at 207 ("The right to a jury trial does not preclude a bankruptcy court from resolving pre-trial dispositive motions. A right to a jury trial does not arise under jury issues are presented.") (citing *McFarland v. Leyh*, 52 F.3d 1330, 1339 (5th Cir. 1995)); *In re Pruitt*, 910 F.2d at 1169 (stating if the suit is "entirely disposed of" before trial accrues, then there will cease to be "cause" for withdrawal). Here, for example, in addition to handling any discovery disputes between the parties, this Court could hold hearings on any motions for summary judgment that the parties might file, and then make a report and recommendation to the District Court as to whether the motion or motions should be granted—either in whole or in part. Signed on this 2nd day of November, 2017.

Lee H. Rosenthal United States District Judge

## ORDER DENYING AMENDED MOTION OF PARK LAKE COMMUNITIES, LP TO WITHDRAW THE BANKRUPTCY REFERENCE

Based upon the Report and Recommendation of the Bankruptcy Court regarding the amended motion of Park Lake Communities, LP to withdraw the reference, the Court finds that the reference should not be withdrawn. It is therefore:

ORDERED that the amended motion of Park Lake Communities, LP to withdraw the reference is denied.